CITY OF DETROIT v. DETROIT CITY RY. CO. et al.

(Circuit Court, E. D. Michigan. March 16, 1893.)

No. 3,320.

1. EQUITY PRACTICE—MOTION TO POSTPONE HEARING—SUIT IN STATE COURT.
   Although federal courts follow the construction of the statutes and constitution adopted by the courts of the state, yet when a suit in equity in a federal court, involving the construction of the statute and constitution of the state, has been set for hearing, the court will not, on motion of a party, postpone the trial to await the decision by the supreme court of the state of a suit pending before it, and said to involve the same question, if it is not clear that the point involved will be determined in the latter suit, and it is uncertain when it will come on for determination.

2. SAME—PROCEEDING IN QUO WARRANTO.
   Nor will the hearing be postponed on the motion of the complainant, a city, although it intends to invoke the aid of the state to test the question involved in a quo warranto proceeding, when doubt exists whether the question can be raised and presented in that way.

3. SAME—DISMISSAL OF BILL WITHOUT PREJUDICE.
   Although a complainant may usually, as of course, have his bill dismissed without prejudice on payment of costs, yet the rule does not apply where the dismissal would prejudice the defendant in some other way than by the mere prospect of future litigation, e. g. if the defendant has gone to the expense of a full preparation for hearing, and has filed a cross bill asking for affirmative relief.

4. SAME—REMOVAL OF CAUSE—PLEADINGS—ANSWER ASKING FOR AFFIRMATIVE RELIEF.
   If the chancery rules of a state court provide that it may give relief to a defendant setting up, by answer, the facts upon which his equity rests,

to the same extent that relief might have been had on a cross bill filed, the defendant need not, upon the removal of a cause to the federal circuit court after such an answer has been filed, reframe his pleading to conform to the federal equity rules, by filing a cross bill setting up the same facts, and praying for relief thereon.

5. SAME—DISMISSAL ON MOTION OF COMPLAINANT.

In 1863 street franchises for a term ending in 1893 were granted to a street-railway company. In 1879 the city council passed an ordinance extending the franchises until 1909. In 1892 the council adopted an ordinance which repealed the ordinance of 1879, and declared all rights claimed thereunder to be void. The city then filed a bill in a state court against the railway company, alleging that the attempted extension of the franchise was unlawful, and praying that the right of the company to use the streets be declared ended after 1893. The railway company answered, alleging the validity of the extension, and praying that the ordinance of 1892 be declared void, and that the city be restrained from interfering with the operation of the railways. It also appeared that the litigation prevented the sale of the company's bonds, and prevented it from making necessary expenditures in the improvement of the streets. and of the motive power of its cars. The mortgagee of the railways and franchises, a foreign trust company, was made a party to the suit, and the cause was removed by it to the federal court. Mich. Chancery Rule No. 123 provides that a defendant may claim, by answer, the benefit of a cross bill, and that relief may be given on such answer as on a cross bill. *Held*, that the railway company was entitled to relief in the federal court on its answer as on a cross bill without reframing the pleading; and that, after it had prepared for hearing, a motion by the complainant to dismiss the bill without prejudice must be denied, the effect of the motion being to defeat its prayer for relief.

6. SAME—DISMISSAL—REMOVAL OF CAUSE BY CORESPONDENT.

The railway company is entitled to oppose the complainant's motion to dismiss without prejudice, and to insist on the trial of the cause, although the trust company, its codefendant, by whom the cause was removed, has filed no cross bill, and although the railway company has no right to be in the federal circuit court except with the trust company.

7. SAME—PREJUDICE TO DEFENDANT.

The court cannot hold that the railway company will suffer no prejudice from the dismissal of the bill merely because the complainant intends to commence a proceeding in quo warranto, when it is not clear that the question at issue can be presented in that proceeding, or that a judgment in the suit in equity would not be a bar to such proceeding.

In Equity. Bill filed in the circuit court of Wayne county, Mich., by the city of Detroit against the Detroit City Railway Company, the Detroit Citizens' Street Railway Company, Sidney D. Miller, and William K. Muir, trustees, and the Washington Trust Company of the City of New York. The Washington Trust Company of the City of New York removed the cause to the federal circuit court, and a motion to remand was denied. 54 Fed. Rep. 1. The complainant now moves to postpone the hearing on bill and answer, or, in the alternative, to dismiss the complaint. Motions denied.

John J. Speed, Charles A. Kent, and Benton Hanchett, for complainant.

Ashby Pond, Frederick A. Baker, John C. Donnelly, Henry M. Duffield, Otto Kirchner, and Henry M. Campbell, for respondents.

Before TAFT, Circuit Judge, and SWAN, District Judge.

TAFT, Circuit Judge. This is an equitable cause, which was removed from the circuit court of Wayne county on the ground of local prejudice, after it was set for hearing on bill and answer. A motion to remand, after full hearing in this court, was denied. 54 Fed. Rep. 1. It was regularly noticed in this court for hearing at the present March term, and, when called on the opening day of the term, was specially set over to be heard at a later day. That day having arrived, the complainant submits two motions in the alternative. The first motion is that the case be postponed for hearing until the June term. The ground for this motion is not that the complainant and its counsel are not now prepared to argue the case on its merits, but it is that a case is now pending before the supreme court of the state of Michigan which, when decided, will settle the construction of the statutes and constitution of Michigan, and determine the only question involved in this case. It may be fully conceded that this court, upon such a question, will follow exactly the decisions of the supreme court of Michigan when rendered because they constitute the law of the state which we are to administer; but it is by no means clear that the case referred to will necessarily decide the point here involved, and it is also uncertain when the case will come on for final determination. It is also said that the complainant proposes to invoke the aid of the state to test the question here involved, in a quo warranto proceeding to be begun after the 9th day of May next against the respondent the Detroit Citizens' Street Railway. It is not free from doubt whether the question can be presented in that way. It is the duty of the federal courts, as of other courts, to give as speedy justice as may be to suitors, and, while it is also their plain duty to accept state law from the state supreme courts on the construction of state laws and constitutions, it never has been held proper for them to delay litigation before them until state courts shall have decided the same questions, for this would be an abdication of their duties as courts. When a question of law is presented, of whatever character, they must follow the lights they have. Burgess v. Seligman. 107 U. S. 20, 2 Sup. Ct. Rep. 10. The motion to postpone will be overruled.

The motion in the alternative is to dismiss the bill in this case without prejudice. The motion is accompanied with the frank statement that the complainant prefers another tribunal than this in which to litigate its rights, and that, with this in view, it proposes after the 9th of May to procure the attorney general to institute quo warranto proceedings which cannot be removed to this court. While it may not be usual to have so candid an avowal of the fact made, the federal courts are frequently compelled to administer justice in cases where one of the parties would prefer another forum. A motion to remand implies this preference. We have found, however, that one of the respondents had the right, under the constitution and laws of the United States, to call upon this court to take jurisdiction of the case. If we are wrong, the question can be reviewed in the supreme court of the United States. As against the right of one party, the preference of another has not usually been regarded of weight. It may not be pleasant to administer justice

under such circumstances, but, as we cannot consult the preference of a party, so we cannot consult our own, where our jurisdiction is rightfully invoked. We can only assure ourselves that the attitude of the parties with respect to this court does not in any way affect our earnest wish to reach the truth, and decide this case as equity and law may require.

The motion to dismiss presents a question of equity practice which is not as clearly settled as could be desired. It seems hardly fair that after a case has been got ready for hearing and the defendant has gone to the expense of a full preparation, the complainant may deprive the defendant of the benefit of all that preparation by a dismissal, under which he reserves full power to harass him by bringing a new bill when he shall choose to do so, on the simple condition that he pay the costs, which are so notoriously inadequate to compensate defendant for his actual expenditures. In England, since 1845, the rule has been, by virtue of an order in chancery, that a dismissal of a bill after a cause is set for hearing is on the merits and must be a bar to the bringing of another bill. General Ordinance No. 117; Mayor, etc., of Liverpool v. Chorley Waterworks Co., 2 De Gex, M. & G. 852; In re Orrell Colliery & Fire Brick Co., 12 Ch. Div. 681, 682. The equity rules of the United States supreme court adopting the practice of the high court of chancery of England were published in 1842, and it follows, therefore, that the equity practice in this regard of the federal courts continues to be that prevailing in the English chancery courts before the new rule was promulgated, in 1845. Badger v. Badger, 1 Cliff. 237; Stevens v. The Railroads, 4 Fed. Rep. 97; Western Union Tel. Co. v. American Bell Tel. Co., 50 Fed. Rep. 662.

It is very clear from an examination of the authorities, English and American, that the right of a complainant to dismiss his bill without prejudice, on payment of costs, was of course except in certain cases. Chicago & A. R. Co. v. Union Rolling-Mill Co., 109 U. S. 702, 3 Sup. Ct. Rep. 594. The exception was where a dismissal of the bill would prejudice the defendants in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind. The exceptions are as broadly and clearly stated as anywhere by Chancellor Harper, of South Carolina, in the case of Bank v. Rose, 1 Rich. Eq. 294, as follows:

"Harper, Ch. The general rule is, as contended for, that the plaintiff at any time before decree, perhaps before the hearing, may dismiss his bill as of course upon the payment of costs; but certainly it cannot be said that the rule is without exception. The exception, stated in general terms, is that it is within the discretion of the court to refuse him permission to do so if the dismissal would work a prejudice to the other parties; and I gather from the cases, compared with each other, that it is not regarded as such prejudice to a defendant that the complainant, dismissing his own bill, may at his pleasure harass him by filing another bill for the same matter. But whenever, in the progress of a cause, a defendant entitles himself to a decree, either against the complainant or against a codefendant, and the dismissal would put him to the expense and trouble of bringing a new suit and making his proofs anew, such dismissal will not be permitted."

In that case there had been a cross bill filed, and affirmative relief asked, and the case had been prepared for hearing, and it was held a case where the motion to dismiss could not be granted. In

Booth v. Leycester, 1 Keen, 247, where a bill and cross bill were set down for hearing together, it was held that the complainant would be prejudiced by dismissal of the cross bill without prejudice, and leave was not granted. In Electrical Accumulator Co. v. Brush Electric Co., 44 Fed. Rep. 602, Mr. Justice Brown held that where, under an answer, and by virtue of the statute controlling patent litigation, a defendant was given a right, in the nature of affirmative relief, to have the patent sued on declared void, and the case had been pending three years, the defendant was entitled to have the original bill heard in spite of a motion to dismiss. In Manufacturing Co. v. Waring, 46 Fed. Rep. 87, Judge Lacombe held that a complainant was not entitled of right to dismiss his bill after the answer is filed, setting up that the license to use a patent upon which the suit is brought is fraudulent and void; and showing that defendant is entitled to a decree for its cancellation. In Western Union Tel. Co. v. American Bell Tel. Co., 50 Fed. Rep. 662, 664, the rule is stated by Judge Colt as follows:

"Under that practice [i. e. the English chancery practice before 1845] the general rule was that a complainant might dismiss his bill upon payment of costs at any time before interlocutory or final decree; and this has been the general practice both in the federal and state courts. There are, however. certain well-recognized exceptions to this rule, and the question which arises upon this motion is whether the defendant comes within any of these exceptions. These exceptions are based upon the principle that a complainant should not be permitted to dismiss his bill when such action would be prejudicial to the defendant. But this does not mean that it is within the discretion of the court to deny the complainant this privilege under any circumstances, where it might think such dismissal would work a hardship to the defendant, as, for example, where it might burden him with the trouble and annoyance of defending against a second suit; but it means that if, during the progress of the case, the defendant has acquired some right, or if he seeks or has become entitled to affirmative relief, so that it would work an actual prejudice against him to have the case dismissed then, the complainant will not be permitted to dismiss his bill."

The question remains whether the case at bar comes within the exceptions. If it does not, we have no discretion to deny the motion If it does, we have a discretion to grant or refuse it. The bill was brought to have the rights of the Detroit Citizens' Street-Railway Company to use the streets of Detroit declared ended after the 9th of next May, in order to enable the city to sell the street privileges now enjoyed by that company to the highest bidder, and to give the future purchaser time in which to make the necessary preparation to exercise the franchise to be conveyed to him. The bill recited that the predecessor of the Detroit Citizens' Street-Railway Company in enjoyment of the grant—the City Railway Company—was organized in 1863, with a corporate life limited to 30 years, and that soon after its organization it was granted street privileges or franchises to last until May, 1893; that in 1879 the common council of the city unlawfully attempted, and without any power in the premises, to extend the franchises until 1909 by ordinance; and that the Detroit Citizens' Street-Railway Company claims to exercise its rights under the void ordinance of 1879, by assignment from the City Railway Company. The bill is in the nature of a bill

to remove a cloud from the title of the city to the exclusive use of its streets for the benefit of the public, unincumbered by the claims of the Detroit Citizens' Street-Railway Company, so that it may dispose of street-railway privileges therein to the best advantage. The Washington Trust Company of New York is made a party because it holds title to the property, and franchises of the respondent company, under a deed of trust to secure a large amount of bonded indebtedness. The railway company answers, setting up a number of additional facts in regard to its ownership and use of the street privileges, claimed by it to operate as an estoppel against the present contention of the city, and recites the passage of an ordinance by the city council of Detroit in 1892, repealing the ordinance of 1879, and declaring all rights under the ordinance of 1879 as void and of no effect. The answer of the railway company concludes with a prayer:

"(a) That the ordinance of March 29, 1892, which by its terms purported to repeal so much of the ordinance of November 14, 1879, as extended the right of the Detroit City Railway Company to use the streets after May 9, 1893, may be declared to be null and void; (b) that the complainant may be enjoined from attempting to enforce the ordinance [of March 29, 1892] in any way, and from interfering in any way, or attempting to interfere in any way, with its rights to use and operate its street railways on the streets and avenues mentioned in the several ordinances, up to the full period named and fixed by the ordinance of November 14, 1879; (c) and for general relief."

This answer was filed in the Wayne circuit court before the case was removed to this court, and the prayer was made in the answer under chancery rule No. 123 of the Michigan equity practice, which provides that—

"In any case in equity, when a defendant shall claim from the complainant any relief which, according to the established course and practice of courts of chancery, might be had by cross bill, such defendant shall be at liberty, by his answer, to present the facts upon which his equity rests, and to claim by such answer the benefit of a cross bill, and the court shall have power to give relief upon such answer to the same extent that it might have given had a cross bill been filed."

No summons or subpoena is issued on this answer in the nature of a cross bill, but the complainant is required to answer or demur to the same without further process. When this cause was removed from the state court, therefore, the complainant was in court both on the bill and the cross bill. The issues as to the bill and answer were made up, and the complainant was in default as to the cross bill. We do not think that the equity rules of the federal courts require a reframing of the pleadings to conform to the practice that must have obtained had the suit been originally brought here. After an equity suit is brought in the United States court, subsequent proceedings are of course governed by the federal equity rules, but, on removal, the rights of parties are exactly the same as when the case was taken from the state court, and are not to be changed except so far as is required by the fact that the equity and law jurisdictions of the federal courts are entirely distinct. This is a purely equitable cause, and no inconvenience is experi-

enced, and no departure from federal equity practice is required, by the form in which it comes into this court in subsequent proceedings here. Our conclusion is not based upon the case of Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. Rep. 638, because an examination of that case shows that the peculiar equity practice in reference to cross bills in Illinois, referred to there, occurred in a case tried in the state court, and that the decree in the case was only under collateral examination, and the case was not directly before the federal court on removal. Our conclusion is based on the language of the removal statute, and the anxiety of the federal courts to preserve the rights of parties on removal exactly as they existed in the state court, so far as this is possible and consistent with the federal statutes and constitution. We think, therefore, the Detroit Citizens' Street-Railway Company is here asking affirmative relief on its cross bill, and, if its contentions are well founded, it entitles itself to that relief by injunction. Its answer and prayer, like the city's, is also in the nature of a cross bill to remove a cloud upon its title to the privileges it claims it ought to enjoy until 1909. If we dismiss the bill, it would seem that under the decision in Chicago & A. R. Co. v. Union Rolling-Mill Co., 109 U. S. 702, 3 Sup. Ct. Rep. 594, the cross bill would fall too; and the question is whether this would prejudice the defendant railway company. We think it would, under the authorities already cited. Moreover, an affidavit has been filed in which it is alleged (and the allegation is not denied) that this litigation has prevented the sale of its bonds, and also that in a short time, during the coming year, if it is to enjoy the franchises it claims, it will have to expend a large amount of money,—more than half a million dollars,—in the improvement of the streets, and of the motive power of its cars. We think it may, on this state of facts, rightfully say that it would be prejudiced by a discontinuance of this suit. Thereby it would be required to bring another bill to assert the same right to affirmative relief it now claims, and the ordinary delays in litigation would delay the decision on such new bill until after the time when this franchise is said to terminate. It is naturally of paramount interest to it, under the circumstances, to know as soon as possible what its rights are in the streets.

The Washington Trust Company files no cross bill; and because it removed the case here, and as against it, if sole defendant, this bill could be properly dismissed without prejudice, it is argued that the defendants the railway companies cannot object to dismissal, because they have no right to be here except with the Washington Trust Company. After the case was removed here, the rights of the parties remained exactly what they would have been in the state court; and, if the complainant could not have dismissed against the railway company there, it cannot here. The complainant cannot dismiss its bill against the trust company without also dismissing it against all the other defendants, and so long as they object to the dismissal, and prevent it, the Washington Trust Company must remain, because it is a necessary party to the litigation.

Finally, it is urged, as a reason why the railway company will not be prejudiced by a dismissal of the bill, that by a quo warranto proceeding, in which the decree of this court, if rendered against the city and in favor of the company, will not be a bar, the city, through the state authorities, can retry the question. The counsel for the railway company contend otherwise, and the question does not seem to be clearly settled in favor of complainant's position. As the railway company is the only one which will be prejudiced by the inconclusive character of a decree in its favor, its willingness to rely on its decree, as such, ought to end the matter. If the city is successful in this case, it is not denied that the railway company will be bound by the decree, and will have to leave the streets. The complainant can hardly be injured, therefore, if it enjoys the unusually advantageous opportunity of being able to try its case twice, in different courts, with two chances for success. For the reasons given, the motions for postponement and dismissal are overruled.

As counsel for the city have previously stated that they, except for the grounds already considered, are ready to argue the case on the merits, the hearing will proceed.