Nora E. Overcash v. Yellow Transit Company, a Corporation, Appellant.—No. 38865.—180 S. W. (2d) 678.

Division One, May 2, 1944.

Rehearing Denied, June 5, 1944.

*J. B. Dudley, Duke Duvall* and *Henry I. Eager* for appellant; *Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

994

*Charles F. Tucker, William C. Reynolds, Paul C. Sprinkle* and *Sprinkle & Knowles* for respondent.

DOUGLAS, J.—Nora Overcash, widow of Charles E. Overcash who died from injuries received in an accident near Hazel Green, Missouri, while driving a truck for his employer, Yellow Transit Company, was awarded $10,968.60 by the Workmen's Compensation Commission. The award was affirmed by the circuit court and the transit company appeals.

The question for decision is whether a prior award by the Kansas Workmen's Compensation Commission bars recovery of a second award for the same injury from the Missouri Workmen's Compensation Commission. We rule the recovery of a second award is barred.

Charles Overcash was a transport truck driver. In the early part of 1941 he was living in Kansas City, Mo. The transit company is an Oklahoma corporation with its principal office in Oklahoma City and is a common carrier of freight by motor vehicle, operating in various states including Kansas and Missouri. It maintained a division terminal and freight depot at Baxter Springs, Kansas for trucks from St. Louis, Kansas City, Dallas and Oklahoma City. In March, 1941, Overcash went to the Oklahoma City office of the transit company to apply for a job. He was directed to see Charles Stewart at Baxter Springs, Kansas. Stewart was the Superintendent of drivers and was in sole charge of employing drivers. Overcash went to Baxter Springs where he saw Stewart and filled out an application blank for a job as driver. Stewart testified he told him "he would have to pass a physical examination and that then he would have to go a couple of trips with some of our older drivers to check up on his driving and also to find out where our stations are, our local stops and our routes through town. He [Overcash] said he understood that that was the requirements of the company, that he would pass a physical examination and make those two trips . . . I told him that at Baxter Springs was the only place I needed anybody, or a driver to work. He said that would be all right; he would like to live in Baxter Springs because it was a small town, because rent would be small and utilities would be cheap and groceries would be cheap. . . . I told him he would have to go to Oklahoma City to take his physical examination because our doctor in Baxter Springs had recently died and we hadn't acquired a doctor in Baxter Springs, Kansas. He said that was all right, being he had to make student trips, that he would go through there. So I routed him through Oklahoma City. . . . I told him . . . if he passed his physical examination, he would go from there to Dallas, Texas, and from Dallas, Texas back through Muskogee, Oklahoma, and to Baxter Springs; then when he got back to Baxter Springs that he should rest a day or something like that, get some rest, and make another trip to Kansas City, Wichita, and back to Baxter Springs, and after he made the two rounds he should report to the dispatcher at Baxter Springs, that he did all of the dispatching of the drivers after they were hired." Overcash, in obedience to the directions, went to Oklahoma City where he took and passed his physical examination. He then completed his two student trips which ended at Baxter Springs. After that he was subject to begin work under the dispatcher at Baxter Springs and from there his first pay trip started. Overcash and his wife

moved to Baxter Springs and settled in an apartment where they made their home. Overcash continued working for the transit company until August 10, 1941 when, returning on a regular run from St. Louis, he collided with a U. S. Army truck causing its gasoline tank to catch fire and explode. Overcash was severely burned and died several hours later.

Overcash left surviving a daughter, Margie, by a previous marriage and his widow, Nora, his only dependents. After his death Margie's grandmother called Nora Overcash and discussed the matter of a claim against the transit company because of Overcash's death. Nora Overcash then went to Oklahoma City to see the officers of the company. She asked them what to do about her claim. She was directed to the company's attorneys. She asked them for their advice. They told her they could not represent her and that she should get her own lawyer. At her request they selected names of lawyers located at Baxter Springs and at Columbus, the county seat, from Martinsdale's and gave them to her. She returned to Baxter Springs. About a week later she went to Columbus and employed a lawyer named Elleman. He instituted probate proceedings and had her appointed administratrix of her husband's estate by the probate court of Cherokee County, Kansas. The inventory which she filed in her husband's estate listed "an unliquidated claim against the Yellow Transit Company under the Workmen's Compensation Act of the State of Kansas for the death of decedent, Charles Marion Overcash (goes to dependents under the law) $4,150."

On December 9, 1941, Nora Overcash executed a "Joint Petition, Stipulation, Agreement and Report" which was filed on December 11, 1941 with the Kansas Workmen's Compensation Commission. This was also executed by the transit company as employer and self insurer. The parties stipulated that subject to the approval of the commission an award because of Charles Overcash's death should be entered in favor of his dependents for $4,000 (the maximum award allowed in such cases) and for $150 burial expense. The transit company later filed a supplemental petition for determination of compensation agreeing to the award but requesting the commissioner to determine the degree of dependency of Nora and Margie Overcash and to make the proper allotment of the compensation to each. The hearing on the allowance of the award was set for January 13, 1942, at Columbus, Kansas.

In the meantime Nora Overcash was staying in Kansas City, Missouri where she was consulting Charles F. Tucker, Esq., an attorney. On December 30, 1941, she filed a claim for compensation because of her husband's death at the Kansas City office of the Missouri Workmen's Compensation Commission.

On the morning of the Kansas hearing Nora Overcash and Tucker, her Missouri lawyer were present at the court house at Columbus,

where the hearing was to be had. Examiner Webb, after calling the docket, announced the hearing on her award was put over until the afternoon because Elleman, her Kansas lawyer was engaged in another city. Nora Overcash and Tucker then requested Examiner Webb to continue the hearing because they had a claim for compensation also on file with the Missouri Compensation Commission. The attorney for the transit company opposed the continuance on the ground he had in court witnesses from another city. The examiner refused the continuance. Then Nora Overcash and Tucker asked that her claim be dismissed or withdrawn which the examiner refused. Then they announced they were leaving and would not return and walked out. While this was taking place Elleman arrived in the court room and he was promptly discharged by Nora Overcash. The claim was duly called for hearing. The record shows Nora Overcash did not appear but that Margie Overcash and the transit company did appear. An award was made for $4,000 (the maximum) apportioned equally between Nora and Margie Overcash payable in weekly installments, and funeral expenses of $150 were allowed.

In its answer filed in the Missouri proceedings the transit company attacked the jurisdiction of the Missouri Commission on the ground the Kansas Commission had prior and exclusive jurisdiction of the claim and the award of the Kansas Commission was res judicata and entitled to full faith and credit under the Federal Constitution. After the Missouri claim was set for hearing the transit company filed suit in the United States District Court to enjoin the hearing before the Missouri Commission and for a judgment declaring the Missouri Commission had no jurisdiction because of the prior award of the Kansas Commission. The district court dismissed the petition. Its action was affirmed by the Circuit Court of Appeals on the ground the Federal Courts should not interfere with the orderly disposition of a State Court litigation. See Yellow Cab Transit Co. v. Overcash, 133 F. (2d) 228.

Thereafter, the claim was heard by the Missouri Commission which awarded Nora Overcash $10,968.60. In the award no mention was made of the Kansas award and no express ruling was made on the defense that it was res judicata.

The laws of both Missouri and Kansas authorized their respective Compensation Commissions to exercise jurisdiction over the claim. The Missouri Compensation law provides it "shall apply to all injuries received in this state, regardless of where the contract of employment was made." Sec. 3700, R. S. Mo. 1939. The Kansas Compensation law provides it "shall apply also to injuries sustained outside the state where the contract of employment was made within the state, unless such contract otherwise specifically provides." Sec. 44-506 G. S. Kan. 1935. We note the Missouri law has the same provision as the Kansas law pertaining to injuries received without this state.

■ Clearly the contract was made in Kansas. The established rule governing the place where a contract is made is stated in 17 C. J. S., Contracts, sec. 356: ''Generally speaking, the place of making a contract is determined according to the parties' intention; as a rule, it is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed.'' And see the recent case decided by this court, Deister v. Thompson et al., 352 Mo. 871, 180 S. W. (2d) 15. Overcash made all arrangements for his employment at Baxter Springs. The fact he had to go to Oklahoma City for his physical examination does not make the contract an Oklahoma contract because passing the physical examination was not the last act necessary to complete the contract of employment. He still had to make his two student trips to permit the transit company's drivers to check his driving. These trips were finished upon his arrival from the second one at Baxter Springs. Then his contract of employment became complete and he was eligible for duty under it. This is borne out by the written records of the transit company. As further indicating Overcash's intention about the contract we can consider the fact he went to Kansas seeking employment and, with his wife, established his home there. The Kansas Commission had jurisdiction to make the award.

■ ■ The action of the examiner in denying the request for a continuance was within his discretion. McCorkle v. Red Star Mill and Elevator Co., 99 Kan. 131, 160 P. 683. He did not abuse it.

■ The requests for the withdrawal of the stipulation and the dismissal of the claim were also within the examiner's discretion. They were informally presented during a recess and not renewed when the matter was called for hearing. The record of the Kansas hearing shows nothing of these requests nor any action or ruling on them. After the requests were denied they were apparently abandoned. Nora Overcash and her Missouri lawyer walked out. The examiner had the right to proceed. Nora Overcash had notice of the hearing and was legally in court. The other parties were present. An award was entered which accorded with the stipulation of the parties. Nora Overcash took no appeal. Under the Kansas law an award from which no appeal is taken is binding and conclusive on the parties, the commission and the courts. Dobson v. Apex Coal Co., 150 Kan. 80, 91 P. (2d) 5. Thus the award comes under the rule that judgments are not subject to collateral impeachment. The general provision of the code of civil procedure (Sec. 60-3105, G. S. Kan. 1935) permitting a plaintiff to dismiss his action without prejudice at any time before final submission is not applicable. The Kansas Compensation Law is held to be exclusve and does not permit borrowing from the code. Cruse v. Chicago, R. I. & Pac. Ry. Co., 138 Kan. 117, 23 P. (2d) 471. Moreover in response to a written request for a continuance, a member of the Compensation Commission

had previously advised Tucker that it was his opinion the Kansas practice would not permit a continuance in a proceeding when a joint petition had been filed. No doubt the same would be true as to an attempt to dismiss a joint petition by only one of the parties. Such would be in harmony with the rule of general procedure that a party will not be permitted to dismiss if such action would prejudice the rights of other parties interested in the prosecution of the suit.

There is no charge nor is there anything in the record to indicate that Nora Overcash was taken advantage of, overreached or misled by the transit company's officers or counsel to whom, on her own initiative, she appealed for advice and help or by Mr. Elleman whom she employed to represent her. There is testimony that Nora Overcash first asked the transit company's counsel to represent her which they refused to do. Then she asked them to recommend some one to represent her and they gave her the names of several lawyers. She then made her own choice from those recommended. It is agreed there was no combination of any kind, or collusion between the lawyer she employed and counsel for the transit company.

On the issue of res judicata we hold the parties are identical. Nora Overcash instituted the Kansas proceeding as administratrix of her husband's estate but for her own benefit and that of the minor daughter. She filed the Missouri proceedings in her individual capacity. Overcash's death gave rise to a single cause of action. In a similar situation it was held there was identity of parties in legal contemplation. Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U. S. 611. The Kansas award was res judicata.

Does the Kansas compensation award, under the full faith and credit clause, Art. IV, Sec. 1 of the Constitution of the United States, bar recovery of compensation for the same injury under the Missouri law? This question has been very recently decided in the affirmative by the United States Supreme Court in the case of Magnolia Petroleum Company v. Hunt, 319 U. S. 734. The facts in the case at bar are even stronger in support of that decision. Here the claimant was a resident of Kansas, the contract was made in Kansas, and the award of compensation was first made by the Kansas Commission. The various dissenters in the United States Supreme Court decision object because there the claim was decided in the state where the injury occurred, not in the state where the claimant resided and where the contract was made.

In that case the company employed the claimant, a Louisiana resident, under a Louisiana contract as a laborer in connection with the drilling of oil wells. In the course of his employment he was sent to Texas where he was injured. He sought and procured in Texas an award under its compensation law. The award became final. Then he brought proceedings for compensation in Louisiana under its compensation law and also recovered an award there. The United

States Supreme Court ruled he was precluded by the Texas award ▉▉▉▉ from recovering a second award in Louisiana. In the course of its opinion the court made these statements.

"In the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events. Pink v. A. A. A. Highway Exp., Inc., 314 U. S. 201, 209-211 and cases cited; Klaxon Co. v. Stentor Co., 313 U. S. 487, 496-498. It was for this reason that we held that the state of the employer and employee is free to apply its own compensation law to the injury of the employee rather than the law of another state where the injury occurred. Alaska Packers Assn. v. Industrial Accident Commission, supra, 544-550. [cf. State ex rel. Weaver v. Mo. Compensation Commission, 339 Mo. 150, 95 S. W. (2d) 641; Hungate v. Hudson (Mo.), 169 S. W. (2d) 682.] And for like reasons we held also that the state of the place of injury is free to apply its own law to the exclusion of the law of the state of the employer and employee. Pacific Insurance Co. v. Industrial Accident Commission, supra, 502-505.

"But it does not follow that the employee who has sought and recovered an award of compensation in either state may then have recourse to the laws and courts of the other to recover a second or additional award for the same injury. Where a court must make choice of one of two conflicting statutes of different states and apply it to a cause of action which has not been previously litigated, there can be no plea of res judicata. But when the employee who has recovered compensation for his injury in one state seeks a second recovery in another he may be met by the plea that full faith and credit requires that his demand, which has become res judicata in one state, must be recognized as such in every other.

"The full faith and credit clause and the Act of Congress implementing it have, for most purposes, placed a judgment on a different footing from a statute of one state, judicial recognition of which is sought in another. Article IV, Sec. 1, of the Constitution commands that 'Full Faith and Credit shall be given in each State to the Public Acts, Records, and Judicial Proceedings of every other State', and provides that 'Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof'. And Congress has provided that judgments 'shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken.' Acts of May 26, 1790, c. 11, 1 Stat. 122, as amended, 28 U. S. C., sec. 687." . . .

"The remedies afforded to respondent by the Texas and Louisiana Workmen's Compensation Laws are likewise rendered mutually exclusive by the Texas judgment and the full faith and credit clause. The Texas award, being a bar to any further recovery of compensation for respondent's injury, is, by virtue of the full faith and credit clause, exclusive of his remedy under the Louisiana Act.

"It lends no support to the decision of the Louisiana court in this case to say that Louisiana has chosen to be more generous with an employee than Texas has. Indeed no constitutional question would be presented if Louisiana chose to be generous to the employee out of the general funds of its Treasury. But here it is petitioner who is required to provide further payments to respondent, contrary to the terms of the Texas award, which, if the full faith and credit clause is to be given any effect, was a conclusive determination between the parties that petitioner should be liable for no more than the amount of the Texas award. For this reason it is not enough to say that a practical reconciliation of the interests of Texas and Louisiana has been effected by the Louisiana court. There has been no reconciliation of the liability established by the Louisiana judgment with the rights conferred on petitioner by the Texas award and the full faith and credit clause." . . .

"Respondent's injury in Texas did not give rise to two causes of action merely because recovery in each state is under a different statute, or because each affords a different measure of recovery. Chicago, Rock Island & Pac. Ry. Co. v. Schendel, supra; Baltimore Steamship Co. v. Phillips, 274 U. S. 316; ▆▆ see Wabash R. R. Co. v. Hayes, 234 U. S. 86, 90. The grounds of recovery are the same in one state as in the other—the injury to the employee in the course of his employment. The whole tendency of our decisions under the full faith and credit clause is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot split up his claim and 'a fortiori, he cannot divide the grounds of recovery.' United States v. California & Ore. Land Co., 192 U. S. 355, 358. Respondent was free to pursue his remedy in either state but, having chosen to seek it in Texas, where the award was res judicata, the full faith and credit clause precludes him from again seeking a remedy in Louisiana upon the same grounds. The fact that a suitor has been denied a remedy by one state because it does not afford a remedy for the particular wrong alleged, may not bar recovery in another state which does provide a remedy. See Troxwell v. Delaware, L. & W. R. R. Co., 227 U. S. 434; cf. Ash Sheep Co. v. United States, 252 U. S. 159, 170. But as we decided in the Schendel case it is a very different matter to say that recovery can be had in every state which affords a remedy."

. . .

1004

Thus the law has been settled, for the time being, that full faith and credit must be given the Kansas award. That precludes further recovery under our act.

The Commission has jurisdiction to consider the defense of res judicata and to determine whether it should bar recovery. Res judicata is an affirmative plea in opposition to a claim or a defense. It goes to the merits, not the jurisdiction. State ex rel. v. Cracraft (Mo. App.), 168 S. W. (2d) 953. Whether a prior judgment is res judicata is ordinarily a question of law. Raney v. Home Ins. Co., 231 Mo. App. 1, 246 S. W. 57; Koontz v. Whitaker (Mo. App.), 111 S. W. (2d) 197. Even so, the Compensation Commission is authorized to decide such question. Liechty v. Kansas City Bridge Co. (Mo.), 162 S. W. (2d) 275. See Marsalek, Workmen's Compensation, 8 M. L. R. 323. On appeal we may review issues of law. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909.

The judgment of the circuit court is reversed and the cause remanded with directions that the award be set aside and the claim dismissed. All concur.