No. 46,230

LUTHER H. DRENNON, *Appellee*, v. BRADEN DRILLING COMPANY, INC. and INSURANCE COMPANY OF NORTH AMERICA, *Appellees*, and COLORADO INTERSTATE GAS COMPANY, and HARTFORD ACCIDENT & INDEMNITY COMPANY, *Appellants*.

(483 P. 2d 1022)

Opinion filed April 10, 1971.

*Harrison Smith*, of Garden City, argued the cause and was on the brief for the appellants.

*Daniel J. High*, of Calihan, Green, Calihan and High, of Garden City, argued the cause, and *Ward Loyd*, of the same firm, was with him on the brief for the appellee, Luther H. Drennon.

*Kerry McQueen*, of Vance, Hobble, Neubauer, Nordling and Sharp, of Liberal, argued the cause and was on the brief for the appellees, Braden Drilling Company, Inc. and Insurance Company of North America.

The opinion of the court was delivered by

SCHROEDER, J.: The primary question presented by this appeal is whether a claimant in a workmen's compensation case, with the permission and consent of the respondent and its insurance carrier against whom the claimant has made a claim for workmen's compensation benefits, may dismiss his claim for such workmen's compensation benefits.

The foregoing issue is complicated somewhat by the facts in this case and the assertions made by the appellants relative to the facts.

Approximately one year prior to April 27, 1968, Luther H. Drennon (claimant-appellee), while employed by Colorado Interstate Gas Company as a well tender, was asked by Marcus Ford, his immediate supervisor at Colorado Interstate Gas Company, if he would help Braden Drilling Company, Inc. take care of some of its wells. Ford at that time introduced Drennon to Donald Jackson, the representative of Braden Drilling Company, Inc. Drennon had done this type of work before while working for other companies at Colorado Interstate Gas Company's request.

As a consequence, Drennon was employed by Braden Drilling Company, Inc. to "blow" its wells, etc. In order for Drennon to carry out his duties for Colorado Interstate he was assigned a pickup and certain tools, all of which were returned to the company's custody at the end of the day's shift, where they remained until the start of the next working day.

Drennon had agreed with Jackson to check a Braden Drilling Company well, commonly known as Lake Unit No. 1, for which he was to receive $75 every three months. This arrangement had been discussed with his Colorado Interstate supervisor who knew Drennon was getting paid for the work. Drennon was told by the Colorado Interstate Gas Company supervisor that if the work for Braden Drilling Company amounted to very much he would have to do it on his own time, but there were some little things he could do on Colorado Interstate's time. It did not take Drennon much time to check the Braden Drilling Company's well known as Lake Unit No. 1.

On the morning of April 27, 1968, Drennon commenced working his assigned wells belonging to Colorado Interstate. After working some of Colorado Interstate's wells in Kearny County, Kansas, he proceeded to his assigned wells located in Stanton County, Kansas,

and while enroute to Stanton County, driving through Hamilton County, he diverted his course and stopped at Graber No. 1 well belonging to the Braden Drilling Company, Inc. to "blow" it as he had previously been instructed to do by Mr. Jackson.

The Graber Unit well was being prepared by Colorado Interstate to be hooked into its system. While in the process of "blowing" the well, commonly known as the Graber Unit, Drennon met with personal injury. At the time he met with his personal injury Drennon was "blowing" the Graber Unit "free gratis" to Braden Drilling Company, "for the benefit and as a matter of public relations for Colorado Interstate Gas Company in getting along with the drillers and drilling companies associated with Colorado Interstate Gas Company."

As a result of the personal injuries Drennon expended over $1,400 for medical treatment, but has never received compensation payments or reimbursement for his medical expenses.

Drennon testified that in the work he did for Braden Drilling Company on the Lake Unit he was never furnished any tools or told when to do the work, other than when to start on the unit; that the Braden Drilling Company never exercised any direction or control over him in the performance of his job.

He further testified the same was true of the Graber Unit.

On the 27th day of September, 1968, Drennon served a written claim for workmen's compensation upon both Braden Drilling Company and Colorado Interstate Gas Company.

On the 4th day of November, 1969, a hearing was held before the examiner, at which hearing the only witness testifying was the claimant, Drennon, who related the facts incident to his employment and the facts concerning the accident. At this hearing it was mutually agreed by all parties that further testimony in the case would be submitted to the examiner by deposition of the various witnesses.

On the 25th day of February, 1970, before additional testimony was taken, the claimant filed a motion to dismiss his claim for workmen's compensation against the Braden Drilling Company, Inc. and its insurance carrier, Insurance Company of North America. In support of his motion the claimant recited that he "was employed by Respondent, Colorado Interstate Gas Co., and within the scope of his employment, at the time he met with accidental injury as per Application and Claim filed September 27,

1968, and for that reason there has been a misjoiner of Respondent Braden Drilling Co., Inc. and its Carrier, Hartford Accident and Indemnity Co."

The claimant named the wrong insurance company and later corrected it to "Insurance Company of North America."

On the 21st day of April, 1970, a hearing was conducted before the examiner on the claimant's motion to dismiss, at which time the claimant again was the only witness. Testimony was elicited to the effect that the claimant knew if the examiner sustained his motion his only remedy thereafter would be against Colorado Interstate Gas Company and its insurance carrier, the Hartford Accident & Indemnity Company. The claimant's testimony disclosed he had discussed the matter with his counsel; was satisfied with his counsel and in agreement with the motion to dismiss. The claimant further stated his medical expenses were somewhere around $1,500; that his doctors informed him it would be necessary to undergo two additional operations; that as a result of said operations he would not be able to work for several months; and that the probable costs of such operations would be at least $1,500. He further informed the examiner of his employment situation with respect to the Braden Drilling Company and Colorado Interstate at the time of the accident; and that he had entered into an agreement with the Braden Drilling Company whereby he was given a cash settlement of $1,500, but that he was not given anything for future medical expenses.

The examiner after hearing the matter sustained the claimant's motion dismissing Braden Drilling Company, Inc. and its insurance carrier.

Colorado Interstate Gas Company and its insurance carrier filed an application for a director's review. On the 18th day of May, 1970, the director affirmed the order of the examiner, finding that the claimant's request to dismiss met with the approval of the Braden Drilling Company, Inc. and its insurance carrier. In the order the driector stated:

". . . The Director does not consider that the protection of the public interest can be extended to disapprove claimant's specific request to Examiner West and further to force the Braden Drilling Company, Inc. and its insurance carrier to continue defense of the claim filed against them. . . ."

Colorado Interstate Gas Company and its insurance carrier then appealed to the district court of Hamilton County, Kansas, from the director's order. Thereafter on the 7th day of July, 1970, the

district court entered judgment affirming the director's order. The findings of fact and conclusions of law in the director's order were adopted by the district court and incorporated and made a part of the journal entry of judgment. Thereupon appeal to the Supreme Court was duly perfected by Colorado Interstate Gas Company and its insurance carrier assigning the following statement of points:

"The Order of the Workmen's Compensation Director was in error in sustaining claimant's motion to dismiss for the reason 1) there is no authority in the Workmen's Compensation Act for so doing. 2) The parties to the action have not had an opportunity to present evidence on the issues defined nor defenses asserted. 3) It is contrary to public policy by thus allowing the employer and injured employee to contract out of the full protection of the Act."

On appeal the Braden Drilling Company, Inc. and its insurance carrier join with the claimant as appellees on the brief filed with the Supreme Court.

In Kansas an employee may have two employers, and in the event of personal injury covered by the workmen's compensation act, the employee may look to either one or both of his employers for compensation in accordance with *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868.

The Kansas workmen's compensation act authorizes settlement by agreement (K. S. A. 44-527; and see K. A. R. 51-3-3 [3].) The rule requires that any agreement must be disapproved by the director, unless compensation has been paid in conformity with the requirements of the act for the injury sustained.

The appellants argue it is impossible for the director to carry out the foregoing mandate, because neither the claimant nor his employer, Braden Drilling Company, Inc., has filed the agreement with the director.

The claimant concedes the settlement agreement made with the Braden Drilling Company, Inc. was never filed with the director of workmen's compensation, but argues the settlement was not made to take the place of a workmen's compensation award.

While the record in this case may be construed, as the appellants construe it, to the effect that the claimant was engaged in dual employment at the time of his accident (see *Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 366 P. 2d 270), it also discloses that the claimant may have been an independent contractor of the Braden Drilling Company, Inc., and by reason thereof not entitled to Kansas workmen's compensation benefits from the Braden Drilling Company, Inc. (See *Henderson v. Sutton's Food City*, 191

Kan. 145, 379 P. 2d 300.) This conclusion must be adopted when the record is viewed in the light most favorable to the prevailing party at the trial court level. There is nothing in the record to establish that the claimant entered into an agreement for workmen's compensation with the Braden Drilling Company, Inc. It follows the appellants' charge that the claimant contracted out from under the benefits of the Kansas workmen's compensation act contrary to the public policy of this state cannot be sustained.

The record does disclose that the claimant elected not to pursue his claim for workmen's compensation any further against the Braden Drilling Company, Inc. and its insurance carrier, but that he is pursuing his claim for workmen's compensation against Colorado Interstate Gas Company and its insurance carrier.

The agreement which the appellants allege to be an agreement for compensation, or in lieu of compensation, is not in the record, nor is there any indication the document was before the examiner. We must assume, therefore, as the appellees contend, that the agreement in question was a settlement relating to possible civil litigation arising from the same surrounding facts as are involved in the claim for compensation filed by the claimant against Colorado Interstate Gas Company and its insurance carrier.

At this point the query is: May the claimant in a workmen's compensation case, with the permission and consent of the respondent and its insurance carrier, against whom he has made a claim for workmen's compensation benefits, dismiss his claim for such workmen's compensation benefits?

The foregoing question is one of first impression in this jurisdiction. The appellants concede, if this had been a civil action, the claimant would encounter no difficulty in having his motion sustained, but they argue there is no express authority in our workmen's compensation act which would authorize the claimant to dismiss his claim against the Braden Drilling Company, Inc. and its insurance carrier. To support their position the appellants rely upon the oft-quoted statement in our decisions to the effect that:

". . . the workmen's compensation act establishes a procedure of its own, and that the procedure furnishes a remedy which is substantial, complete and exclusive in compensation cases. . . ." (*Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 298, 98 P. 2d 456; and see *Anchor Casualty Co. v. Wise*, 172 Kan. 539, 542, 543, 241 P. 2d 484.)

What the appellants fail to note in the foregoing quotation is that

it is the *remedy* which is said to be substantial, complete and exclusive and not the procedure provided in the workmen's compensation act.

The appellants also rely upon *Kissick v. Salina Manufacturing Co., Inc.*, 204 Kan. 849, 466 P. 2d 344, where this court stated the workmen's compensation act makes no provision for the dismissal of an employer's appeal upon his failure, pending appeal, to make the payments specified therein.

The section of the workmen's compensation act pertaining to procedure is K. S. A. 44-523. It provides in part that the director or court in a workmen's compensation proceeding shall not be bound by technical rules of procedure, and that they shall act reasonably without partiality. The fair implication of the workmen's compensation act is that any procedure which is appropriate and not prohibited may be employed. (*Walker v. Kansas Gasoline Co.*, 130 Kan. 576, 581, 287 Pac. 235.)

The appellants rely upon two cases from other jurisdictions for the proposition that the claimant is not authorized to dismiss his claim for workmen's compensation against his employer under the workmen's compensation act. (*Profitt v. J. G. Watts Const. Co.* [1962] 140 Mont. 265, 370 P. 2d 878; and *Overcash v. Yellow Transit Co.* [1944] 352 Mo. 993, 180 S. W. 2d 678.)

In the *Profitt* case an employee filed a claim with the Industrial Accident Board of Montana, but thereafter attempted to withdraw the claim so that he could maintain a civil action against his employer. His employer demanded a hearing of the claim and opposed the withdrawal of the claim. Although the language in the opinion of the Montana Supreme Court is silent as to whether or not there was a procedure available to withdraw claims before the Industrial Accident Board, the court held the Industrial Accident Board could not dismiss a claim on the application of the employee *over the objection of the employer,* implying that a claim could be withdrawn if the employer did not object.

Clearly, this case is distinguishable and tends to support the action of the trial court herein because the Braden Drilling Company, Inc., the employer against whom the claimant in the instant case filed a claim which he later sought to withdraw, consented to the dismissal of the claim.

In the *Overcash* case a truck driver employed and residing in Kansas was killed in the course of his employment while driving

a truck in the state of Missouri. The employee's widow and minor daughter filed a *joint claim* for workmen's compensation in Kansas under the Kansas workmen's compensation act. Thereafter the widow also filed a claim for workmen's compensation in the state of Missouri under its act. Over objection of the respondent employer the widow then sought to dismiss her claim against the employer in the Kansas proceeding, after she was denied a continuance. The widow failed to appear upon refusal of the examiner to dismiss the claim, but the minor daughter and the employer appeared at the hearing and an award of compensation was made. The question before the Missouri Supreme Court was whether a prior award by the Kansas workmen's compensation commissioner barred the recovery of a second award for the same injury under the Missouri workmen's compensation act. The court held the second award was barred. The Missouri Supreme Court, in arriving at its decision, reviewed portions of the Kansas workmen's compensation act, and it held that a joint claim could not be dismissed by one of the parties under the Kansas workmen's compensation act. The court stated:

". . . Moreover in response to a written request for a continuance, a member of the Compensation Commission had previously advised Tucker that it was his opinion the Kansas practice would not permit a continuance in a proceeding when a joint petition had been filed. No doubt the same would be true as to an attempt to dismiss a joint petition by only one of the parties. Such would be in harmony with the rule of general procedure that a party will not be permitted to dismiss if such action would prejudice the rights of other parties interested in the prosecution of the suit." (pp. 1000, 1001.)

A fair implication in the *Overcash* opinion is that if the claimants, who filed a joint claim, and the respondent and its insurance carrier, against whom the claim was made, had all agreed to a dismissal of the joint claim, such dismissal would be permitted.

The *Overcash* case has been interpreted in 100 C. J. S. Workmen's Compensation § 422, as follows:

". . . Where a party is not entitled to a voluntary dismissal as a matter of right, the grant or denial of a dismissal rests in the discretion of the board or examiner. . . ." (p. 265.)

A Kansas case which refutes the appellants' contention that procedure under the Kansas workmen's compensation act is exclusive is *Carter v. State Department of Social Welfare*, 186 Kan. 187, 348 P. 2d 609. The question there was whether a district court could dismiss a respondent's appeal for want of prosecution.

The respondent appealed from an award of compensation to the district court of Shawnee County, Kansas. After the respondent failed to appear on the first day of two successive terms of the district court, where an official legal publication had listed the case for disposition or assignment, the case was called by the court and the respondent failed to appear. Thereupon the district court dismissed the case for want of prosecution. The respondent appealed and this court held the lower court had not abused the exercise of its power of discretion and quoted language from *City of Wichita v. Houchens*, 184 Kan. 297, 335 P. 2d 1117, as follows:

" 'We think the law is well settled that the power of the courts to dismiss a case because of failure to prosecute with due diligence is inherent and exists independent of any statute or rule of court. (*City of Wichita v. Catino*, 175 Kan. 657, 265 P. 2d 849; 17 Am. Jur., Dismissal, Etc., § 77, p. 151; 27 C. J. S. Dismissal and Nonsuit § 76.)' " (p. 189.)

There is nothing in the Kansas workmen's compensation act which expressly authorizes the dismissal of an appeal to the district court for want of prosecution.

In view of the admonition of the legislature in 44-523, *supra,* that the workmen's compensation director or court shall not be bound by technical rules of procedure, any procedure which is appropriate and not prohibited by the Kansas workmen's compensation act may be employed, where those charged with administering the law act reasonably and without partiality.

In *Jones v. Securities Commission* (1936) 298 U. S. 1, 80 L. Ed. 1015, 56 S. Ct. 654, the United States Supreme Court was confronted with an administrative procedural problem. In the opinion the court said:

". . . The act contains no provision upon the subject; and it may not be construed as attempting to confer upon the commission an arbitrary power, under rule or otherwise, to deny, without reason, a motion to dismiss. We are unable to find any precedent for the assumption of such power on the part of an administrative body; and we go to the practice and rules of the courts in order to determine by analogy the scope and limit of the power; for, at least in the absence of a statute to the contrary, the power of a commission to refuse to dismiss a proceeding on motion of the one who instituted it cannot be greater than the power which may be exercised by the judicial tribunals of the land under similar circumstances. . . .

. . . . . . . . . . . . . . . .

" 'It is very clear from an examination of the authorities, English and American, that the right of a complainant to dismiss his bill without prejudice, on payment of costs, was of course except in certain cases. . . . The exception was where a dismissal of the bill would prejudice the defendants in

some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind.' [*City of Detroit v. Detroit City Ry. Co.,* 55 Fed. 569, 572.]" (p. 19.)

The Kansas workmen's compensation act makes no provision concerning the subject of dismissal of claims, but the Kansas code of civil procedure provides for both voluntary dismissal by one who initiates proceedings and by order of the court. (K. S. A. 60-241 [*a*].)

The Braden Drilling Company, Inc. and its insurance carrier see no prejudice and claim none to them as a result of the dismissal of Drennon's claim for compensation against them. Neither the director nor the trial court saw any prejudice to the appellants by the dismissal of Drennon's claim for compensation against Braden Drilling Company, Inc. and its insurance carrier, because his claim against Colorado Interstate Gas Company and its insurance carrier is still pending for presentation of evidence and determination by the examiner. The granting of the claimant's motion for dismissal in no way deprives the appellants of their right to present evidence on the issues defined or the defenses which they may assert.

Any rights the appellants may have against the Braden Drilling Company, Inc., or its insurance carrier, cannot affect the claimant's rights under the workmen's compensation act against the appellants. (*Attebery v. Griffin Construction Co.,* 181 Kan. 450, 312 P. 2d 598; *United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P. 2d 70; and *Kuhn v. Grant County,* 201 Kan. 163, 439 P. 2d 155.)

In view of the fact that the Kansas workmen's compensation act is silent on the subject of dismissals, and that it is within the discretion of the district courts to enter orders of dismissal on such terms and conditions as the judge deems proper, the claimant was exercising his unqualified right to move for a dismissal of his claim with the consent of the Braden Drilling Company, Inc. Accordingly, the district court of Hamilton County, Kansas, did not err in granting the claimant's motion for dismissal, but was in fact exercising an inherent power independent of any statute or rule. (See *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P. 2d 966.)

The judgment of the lower court is affirmed.