MADGE A. DEISTER, Appellant, v. J. J. THOMPSON and GLENN THOMPSON, doing business as J. J. THOMPSON & SON, and LUMBERMAN'S MUTUAL CASUALTY COMPANY.—No. 38840.—180 S. W. (2d) 15.

Division One, April 3, 1944.

Rehearing Denied, May 2, 1944.

*Jay B. Wilson, Philip J. Close, Hook & Thomas,* and *Inghram D. Hook* for appellant.

*Paul C. Sprinkle, William F. Knowles,* and *Sprinkle & Knowles* for respondents.

872

██ BRADLEY, C.—This is a Workmen's Compensation case. Claimant, appellant here, sought compensation for the death of her husband, Leonard H. Deister, an employee of J. J. Thompson & Son. The Lumberman's Mutual Casualty Company was the insurer. A referee allowed the claim for $12,430, plus a burial allowance. Appeal was taken to the Commission and the Commission found "that the contract of employment was not made in Missouri"; that the accident occurred in the State of Kansas, and that the Commission, therefore, was without jurisdiction, and compensation was denied. Claimant appealed to the circuit court from the order of the Commission denying compensation. The circuit court affirmed the order of the Commission, not upon the ground stated by the Commission, but upon the ground that the employer had never done business in Missouri; had never qualified to do business in Missouri, and that such being so, the Missouri Workmen's Compensation Act was not applicable. Claimant again appealed.

Respondents, employer and insurer, contend that claimant is not entitled to compensation under the Missouri Workmen's Compensation Act, and base their contention on four grounds: (1) That the contract of employment was not made in Missouri and the accident occurred in Kansas; (2) that the annual earnings of the deceased were in excess of $3600; (3) that under a federal statute (40 U. S. C. A., Sec. 290) the Workmen's Compensation Act of Kansas governed; and (4) that the employer ██ was not and had not been operating, that is, doing business in Missouri, and therefore, was not subject to the Missouri Act.

The employer resided in Oklahoma City, Oklahoma, and had a government contract for the construction of a Naval Air Base at Gardner, Kansas. The deceased was employed to work on this job, and while at work, operating a scoop or scraper machine, on May 2, 1942, was struck by lightning and killed. It is conceded that the accident occurred in Kansas, but claimant says that the contract of employment was made in Missouri, and if so, claimant can recover [Sec. 3700 R. S. 1939, Mo. R. S. A., Sec. 3700] unless denied compensation because of grounds 2, 3, and 4 above, or one of them.

Was the contract of employment made in Missouri? The Commission found that it was not, but claimant contends that there was no substantial evidence to support such finding. Deceased resided at Parkville, Missouri, and was a member of local No. 101, hoisting engineers union, Kansas City, Missouri. Elmer Foster was steward of the union on the air base job and was also employed on the job by the employer. Asked the duties of a steward, Foster said: "Well, when the contractor wants men, he tells the steward, and the steward calls the Labor Temple (Kansas City, Mo.) and orders the men out." No men, for the type of work deceased was doing, were hired on the job except through local No. 101.

Foster further testified: "Pallesen, the employer's superintendent, in January, 1942, requested me to get some men, and when I got off my shift, I got in touch with Lane (business agent of the union) at the Labor Temple; I went to the Labor Temple, and told Lane that we wanted some men at the Gardner Air Base. We looked at some books upon which the names of idle men are kept and then I asked him about Deister (deceased) going to work, and he said it was perfectly all right (Foster had known Deister several years). He (Lane) then picked up a phone and called Deister at Parkville; asked him if he wanted to go to work and Deister said he did. Lane told Deister to report at the Labor Temple. Deister came to the Labor Temple and was sent to the employment office, Kansas City, Kansas, and was told to see a man named Edwards. Lane called Edwards and told him, 'I am sending Leonard Deister over. Give him a card.' So Deister went over there and got fixed up at the employment office. When Lane got through talking with Deister he said to me, 'All right. Leonard Deister is going out there. It is perfectly all right. Leonard can go out and go to work. He is going to work.' I saw Deister that night when he came to work. The cards obtained at the employment office are turned over to the contractor" (employer).

Lane testified: "I am business representative of the union, and have offices at the Labor Temple, Kansas City, Mo. Shortly after J. J. Thompson & Son procured the contract for the construction of the Gardner Naval Air Base they contacted me with reference to supplying them men from the union for grading work. We had no signed contract with J. J. Thompson & Son, but the men we sent got show up time, that is, if a man showed up for work and did not work because of weather conditions, etc., he got pay for two hours, if on day shift, or pay for four hours, if on night shift. I do not recall talking personally to Deister, but I sent him out there. I remember Elmer Foster calling me about Deister. If he (Foster) gets any advance information on them (employer) wanting some men, he usually calls us, and sometimes he would ask for a certain person, like he did when he asked if I would put Leonard Deister to work, and I told him the first chance I had, I would put him to work. I contacted Deister; called by telephone at Parkville. Mr. Pallesen called me for a scoop operator, and then I contacted Mr. Deister and told him to come over to the office of Labor Temple (in Kansas City, Mo.) and then I sent him to the employment office over in Kansas City, Kansas, and he went out to the job and went to work. I told him to go to the employment office and then report out at Gardner to Mr. Pallesen, and he signified that he would. The employment office issued to the men we sent what is known as a 320 card, that is, an identification and qualification card. The only thing required by the employment office is the social security number. In January and February, 1942 (Deister was employed in January, 1942), a man had to have the 320 card to be

admitted to the premises of the Gardner Naval Air Base. I don't think that J. J. Thompson & Son ever rejected any one that I sent out; I don't recall. I reached an oral understanding with Mr. Pallesen (employer's superintendent) that all the hoisting engineers on this job would be supplied through the union. The last time I saw Deister, he left my office and signified he was going over there (to the job) and go to work.''

On cross examination Lane testified: ''Deister went to the employment office in Kansas City, Kansas; got the 320 card. The card had on it, 'Leonard Deister, scoop operator', I imagine (Deister's card was not in evidence). I have seen those blank cards. It had a place on there to reject. There was printed on the face of the 320 card a place for the contractor to state whether or not he had accepted or rejected the man. There was no rejections from J. J. Thompson & Son on the men I sent out there. Q. (By Mr. Sprinkle): As I understand it, there is no question in your testimony but that Thompson (employer) had the right to accept or reject those men when they came out there with the card, and they sent it back showing they did one or the other? A. That is right, but they never did. Q. They had the right to? A. They had the right to.''

A. W. Pallesen, as a witness for the employer and insurer, testified: ''I am employed by J. J. Thompson & Son; am superintendent of construction. In order to get men on the Gardner air field job, I would call the employment office in Kansas City, Kansas, and tell them I needed so many men, and what kind of men I needed, whether operators, common laborers, or what class of men I wanted. When the men came out they would bring a card (320 card) and the employment office would send us a card to correspond with the card the men brought. When a man came with a 320 card, we generally asked them what they did, whether they operated a machine, and put them to work. I have sent men back (to the employment office); sent the cards back too, and wrote on them 'unqualified.' After we hired a man, we made out a hiring slip. I don't recollect as to hiring Deister; so far as my recollection goes, he was hired in the regular way like the rest of them. Mr. Lane and I have been very close friends. He has supplied me with all the hoisting engineers on this job. I rejected a man that Lane sent; I asked the man if he had ever operated any equipment and he said, 'No, but I can do it.' I let him try it and he stayed on about five minutes, and I told him he had better get off, because he couldn't do it. I did not put him to work. I rejected men when, in my opinion, they were not qualified. Deister went to work at night. I think he went to work as soon as he hit the job. I probably was not there when he came out. I reserved the right to hire or not hire when men come to the job.''

 Claimant contends that Deister's contract of employment was *made,* that is, finally closed, at the Labor Temple, Kansas City, Mis-

souri, when Lane sent him away from the labor office to go to the employment office in Kansas City, Kansas, for the 320 card, and thence to the job at nearby Gardner, Kansas. On the other hand, the employer and insurer contend that the contract was not finally closed until Deister had been *accepted* by the employer at the Gardner air field. If Deister was *employed* when he left the Labor Temple, then the contract of 'employment was made in Missouri, and claimant is entitled to compensation so far as concerns the place of contract. Sec. 3700 R. S. 1939, Mo. R. S. A., Sec. 3700.

■ "The place of contracting was the place where the minds of the parties met, and in determining the place where the minds of the parties met, all of the facts and circumstances and the conduct of the parties must be taken into consideration." Kelsall v. Riss & Co. (Mo. App.), 165 S. W. (2d) 329, 1. c. 332, and cases there cited. "It is settled law that the place where the final act occurs which makes a binding contract is the place of contract." Daggett et al. v. Kansas City Structural Steel Co. et al., 334 Mo. 207, 65 S. W. (2d) 1036, 1. c. 1039.

■ "Findings of fact made by the Commission, if sustained by sufficient competent evidence, are, absent fraud, conclusive on appeal, and in determining the sufficiency of the evidence upon which the commission based its finding we consider the evidence in the light most favorable to the finding and disregard evidence which might support a different finding than made." Adams v. Continental Life Ins. Co. et al., 340 Mo. 417, 101 S. W. (2d) 75, 1. c. 77, and cases there cited. See also, Sec. 3732 R. S. 1939, Mo. R. S. A., Sec. 3732.

■ Counsel for claimant, in the brief, give their construction of the evidence on the point as to place of contract as follows:

"Elmer Foster, the steward on the job at Gardner, was requested by the foreman ■ or superintendent of the employer, to obtain more men. When the men were ordered out Foster wanted Deister, the deceased, to come on the job and to that end he contacted Dave Lane, the business agent for the hoisting engineers union, at the Labor Temple, 14th and Woodland in Kansas City, Missouri. Deister was offered the job by Lane and C. G. Hamilton, also connected with the union at the Labor Temple, and he then and there accepted. It was a part of the general agreement that Lane and Hamilton should supply all men of this particular craft. Such men, including the deceased, were given an authorization slip by the union and their pay began as soon as they appeared on the employer's premises (no evidence that pay so began). Deister began working without any further ceremony or questioning by the employer as far as the record discloses as to this particular man. It is not clear whether he reported for identification and clearance at the Kansas Employment Commission before he went to work or afterwards. The offer of employment, as stated, was communicated through Foster and Lane to

Deister in Missouri, at the Labor Temple and he accepted the offer of employment when it was made and appeared on the job routinely, as had all other workmen supplied under the terms and arrangements between the union and the employer.''

It, in effect, is conceded (see evidence of Lane) that the employer had the right to reject any man sent over by the union, and Pallesen said that some were rejected. So it appears that a contract of employment was not actually *final* until a man was accepted by the employer. Counsel for claimant say, as appears, supra, that ''the offer of employment . . . was communicated through Foster and Lane to Deister in Missouri at the Labor Temple, and he accepted the offer of employment when it was made.'' But Pallesen said that ''when the men came out they would bring a card'', etc. This was the 320 card upon which was a blank for the employer to write accepted or rejected, whichever decided upon. And Pallesen said that, so far as his recollection went, Deister ''was hired in the regular way like the rest of them'' (men sent out by the union). If so, then the inference could be drawn that some one for the employer *accepted* Deister on the night he went to work. Counsel say, as appears, supra, that it is not clear whether Deister reported for the 320 card at the Kansas employment office before he went to work or afterwards, but Pallesen testified that at that time no one could enter the premises of the Gardner Naval Air Base without the 320 card. Hence, the inference could be drawn that Deister had the 320 card on the night he reported to work.

To support the contention that Deister's contract of employment was *made* in Missouri, claimant relies upon Daggett et al. v. Kansas City Structural Steel Co. et al., supra, and Sims v. Truscon Steel Co. et al., 343 Mo. 1216, 126 S. W. (2d) 204. In both these cases the Commission found that the contract of employment *was made in Missouri*. If such had been the finding of the Commission in the present case, we would have an entirely different situation. However, in the present case the Commission found that the contract of employment *was not made in Missouri*, and if there was any substantial evidence to support that finding, we are bound by it. And in determining whether there was such substantial evidence, ''we consider the evidence in the light most favorable to the finding'' of the Commission ''and disregard evidence which might support a different finding than made.'' Adams v. Continental Life Ins. Co. et al., supra.

In view of the finding of the Commission and the applicable law, we cannot say that there was no substantial evidence to support the finding of the Commission. We do not believe that it can, in fairness, be said that under the evidence an inference could not be fairly drawn that the final act in employing Deister was his acceptance after he arrived on the premises on the night he went to work. Having reached

such conclusion, it will not be necessary to rule other questions raised by appellants.

The judgment of the circuit court affirming the order of the Commission denying compensation should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.