**Ed PHILLIPS, Plaintiff-Appellant,**

**v.**

**Richard D. ENGLEHART et al., d/b/a Bee Line Company, a Partnership, Defendants-Respondents.**

**No. 24961.**

Kansas City Court of Appeals, Missouri.

Dec. 2, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1969.

Gene A. DeLeve and Berman, DeLeve, Kuchan & Chapman, Kansas City, for plaintiff-appellant.

Linde, Thomson, VanDyke, Fairchild & Langworthy, Joseph Y. DeCuyper, John G. Miller, Kansas City, for defendants-respondents.

SPERRY, Commissioner.

This is a suit by plaintiff to recover payments made by him on personal property purchased from defendants under a conditional sales contract. Plaintiff's claim is based on the provisions of Sections 428.100 and 428.110, R.S.Mo.1959. Plaintiff seeks recovery of the amount paid by him on the purchase price of the property, $7,471.49, "less such sum, if any, as is found and determined to be a reasonable compensation for the use of such equipment, not to exceed twenty-five percent of the amount paid. * * *."

Plaintiff, a resident of Jackson County, Missouri, operated a truck repair shop in Kansas City, Missouri, at all times pertinent to this law suit. Defendants, operating under the name of Bee Line Company, a partnership consisting of members of the Englehart family, operated a manufacturing company at Bettendorf, Iowa, (mailing address Davenport, Iowa) where automobile and truck alignment, and wheel and frame straightening equipment was manufactured for sale.

In March, 1963, defendants' salesman, Nolte, called at plaintiff's place of business and offered to sell him certain automobile equipment. Negotiations continued until June when plaintiff agreed to buy such equipment. On June 16, 1963, Mr. Nolte prepared a written order for a truck frame straightener and a truck wheel straightener

on stated terms, to which plaintiff agreed. Plaintiff signed the order and paid $1,000.00 thereon. He was told that it would have to be approved by Bee Line at its offices in Iowa before it would be binding on defendants. A few days thereafter Mr. Nolte informed plaintiff that the order had been accepted and the equipment would be shipped when the balance of the twenty-five percent down payment was paid. On June 25, 1963, plaintiff paid the sum of $3,346.87 to Nolte, that being the balance of the down payment. The remaining balance, $13,040.61, plus five percent interest for five years ($1,956.09) and Missouri sales tax, was to be paid in monthly installments. The order also provided that "it is hereby agreed that a conditional sales contract shall be signed on delivery of the equipment ordered * * *".

Defendants' sales manager received and accepted the order. Invoices dated 6–17–1963, were prepared, showing that said equipment was sold to plaintiff. Plaintiff received the invoices a few days later; the merchandise was delivered to a carrier at Davenport, Iowa, on June 27, consigned to plaintiff at his Kansas City shop; the equipment was delivered to plaintiff July 1; Mr. Nolte assembled the equipment at the shop on July 15, and also sold plaintiff a passenger car wheel straightener; the unpaid balance due thereon, including Missouri sales tax, was added to that due for the other equipment. This last equipment was delivered to carrier at Davenport, Iowa, July 23, and received by plaintiff July 25. After all the equipment was delivered Nolte produced a conditional sales contract which was signed by plaintiff at his place of business.

This instrument was duly executed at Davenport, Iowa, by the authorized officers of defendant partnership. At the top of the first page, under "Conditional Sales Contract", it is stated that "Seller hereby sells" and "buyer, * * * * hereby purchases, *subject to the terms and conditions hereinafter set forth*" (emphasis ours), the following described property *located and to be kept during the life of the contract on the premises known as Ed Phillips Truck Shop, 1224 Union, Kansas City, Missouri.* Next follows a description of the property conveyed and the terms of the sale and of payment, by monthly installments, of the unpaid purchase price.

Following description of the property and detailed terms of payment of the purchase price, appear separately numbered printed conditions. Among such conditions (we will not mention all of them nor set any of them out verbatim) were the following: 1. Care of property. The buyer shall take good care of the property, shelter it, keep it in good condition and free from all legal claims against it, * * *; 2. Taxes. Buyer shall pay all taxes and deliver to defendants on or before October 10 each year, duplicate receipts for payment thereof; 3. Insurance. Buyer shall, at his expense, keep said property insured against certain named risks in Companies approved by seller, with policies furnished to and deposited with defendants. 4. Title Reserved. Entire title to property shall remain in defendants throughout the life of the contract; 5. * * * 5.1 Insecurity. Provision is made for repossession if defendants should consider it necessary for its security, and that same should be accomplished as provided in paragraph 5.2, without legal process.

There were provisions for appointment of receivers and expenses therefor, including attorney fees. Paragraph 8 provides as follows:

"Place of Payment. All sums due or to become due herein shall be paid at Post Office Box 569. Davenport, in Scott County, Iowa; and the other terms and provisions of this agreement shall be performable in said county and state".

In May, 1964, Mr. Nolte offered to sell plaintiff a wheel-balancer, which he had with him. Plaintiff executed a written order therefor. The balancer was then and there delivered and, at Nolte's request, plaintiff later executed a new conditional

sales contract, whereby the wheel-balancer and tools were included, together with the previously mentioned equipment. *All* items were described therein and the unpaid balance due for all (including Missouri sales tax) was stated, together with the terms for payment. It also contained fifteen printed conditions identical with those contained in the first such conditional sales contract executed by the parties.

Plaintiff paid some of the installments provided in the contract. The total paid on the purchase price was $7,471.49. He became delinquent on the account and defendants notified him that it would take possession of all of the equipment. Plaintiff agreed that it might do so, without legal action, and did not demand payment due to him, of any part of the $7,471.49 theretofore paid to defendants. Defendants peaceably took possession of the property at plaintiff's place of business. Thereafter, plaintiff demanded refund of seventy-five percent of the amount paid by him to defendants, which demand was refused.

At the conclusion of all of the evidence the court entered judgment for defendants. The court found: "that pursuant to the terms of the contract, to-wit, the verbiage used as follows: 'and the other terms and provisions of this agreement shall be performable in said county and state', meaning the state of Iowa, the said contract was an Iowa contract and governed by the laws of the state of Iowa, notwithstanding the fact that said articles under consideration were delivered to the plaintiff in the state of Missouri, where they remained until they were repossessed by defendants".

Plaintiff says that the real issue in this case is whether his right to recover is governed by the law of Iowa or that of Missouri; that if Missouri law governs, plaintiff should recover; that, if Iowa law governs, then the judgment should be affirmed. Defendant agree with that theory.

This is a court tried case. We may reach our own conclusions with respect to the evidence and enter the kind of judgment that we believe the trial court should have entered. We should defer to the conclusions of the trial court with respect to matters concerning the credibility of witnesses and affirm the judgment unless it is clearly erroneous. However, in this case, the evidence consists very largely of undisputed documents introduced by plaintiff, and there are no material conflicts in the oral testimony. Determination of the issues here presented rests upon application of the law to the virtually undisputed facts.

In Overcash v. Yellow Transit Company, 352 Mo. 993, 180 S.W.2d 678, 681, the court quoted 17 C.J.S. Contracts § 356, to the effect that, generally speaking, the place of the making of a contract is determined according to the parties' intention; as a rule it is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed. In Deister v. Thompson, 352 Mo. 871, 180 S.W.2d 15, 17, the court quoted Daggett v. Kansas City Structural Steel Company, 334 Mo. 207, 65 S.W.2d 1036, 1039, as follows:

"It is settled law that the place where the final act occurs which makes a binding contract is the place of contract."

However, it is also the law that parties to a contract have a right to agree that the contract shall be governed by the law of any particular state where some element of the contract is properly referable. Hansen v. Duvall, 333 Mo. 59, 62 S.W.2d 732, 739.

In 16 Am.Jur., Conflicts of Laws, paragraph 41, it is said that the proper law of the contract is that which the parties intended or may fairly be presumed to have intended. Under this rule, the place where the contract is made and the place where it is to be performed are both important indicia of the law by which the parties may

fairly be presumed to have intended that the contract should be governed, but *neither is necessarily conclusive.*

In 17 C.J.S. Contracts § 12, paragraph 3, it is said:

"Under what has been called the traditional view, the intention of the parties as to which law shall govern their contract is ordinarily decisive, the conflict of laws rules in this regard being, for the most part, presumptions employed where a clear expression of intention is lacking. The general rules yield to the primary canon of construction which requires that, where it can be ascertained, the intention of the parties shall govern.

" * * *

"The intention of the parties may either be express or may be implied, as from their acts and conduct at the time of making the contract, and where the intention is not express, it is to be inferred from the terms and nature of the contract and the general circumstances of the case, such inferred intention determining the proper law of the contract. *Neither the place where the contract is made nor the place at which it is to be performed is conclusive as to the law by which the parties intended the contract to be governed*, both being merely important indicia of such fact." (Emphasis ours.)

In 78 C.J.S. Sales § 568b it is said:

"As a general rule, where a conditional sale contract is made in a state where the property is then situated but it is contemplated by the contract that the property is to be *used* in another state, that is to say, that the contract is to be performed *or to have its beneficial operation in the latter state*, the laws of the latter state and not those of the state where the property was originally situated govern in determining the validity, construction, and effect of the contract, and this has been held to be true even though the contract provides that the laws of another jurisdiction, such as those of the jurisdiction where the contract was made, shall govern. The rule has been held applicable where, under the terms of the contract, the sale is completed by delivery to the purchaser in the state where it is to be used, and it has also been held applicable where the property is delivered to the purchaser in the state where the property was situated and the contract made, and by him shipped into the state where it was contemplated by the contract that it was to be used. * * *" (Emphasis ours.)

In Memphis Bank & Trust Company, v. West, Mo.App., 260 S.W.2d 866, 875, the court said:

" * * *

"It is the general rule that the law of the state where the contract of conditional sale is made, and in which the property has its actual situs, determines the validity of the contract in all respects, both as between the parties thereto and as against third parties, unless it appears from the terms of the agreement or the nature of the transaction that the contract was entered into with reference to the law of some other state or country. * * *"

At page 876, the court said:

" * * * Under this state of the law, the domicile of the conditional vendee becomes important only as evidence from which an inference of intent may be drawn in those cases where it is sought to establish that the parties at the time of sale contemplated removal of the property to the state of the purchaser's residence. Where the parties contemplate removal of the property to said state they are held to have intended to contract with reference to the law of the vendee's domicile. * * *"

In American Hoist & Derrick Company v. Trustee & Registrar Corporation of

Missouri, Mo.App., 27 S.W.2d 437, 438, the court recited the following facts:

" * * * The contract of sale between the granite company and the derrick company provided that delivery was to be f. o. b. cars at the works of the seller in St. Paul, Minn. The shipment was to be consigned to the granite company at Iron Mountain, Mo., from St. Paul, Minn. The contract further provided that it was made subject to the approval of the seller at his home office at St. Paul, and was not in full force and effect until counter-signed by the managing partner of the seller. The contract also provided that the goods were to be delivered and received by the buyer on the express condition that they were and should remain the property of the seller until the purchase price was paid in full. * * *"

Thereafter the court said:

" * * * It is a conditional sales contract. The contract was recorded in this state, the property was here, and the American Hoist & Derrick Company was seeking to recover this property by virtue of the terms and conditions of this contract, and all the facts show that the parties intended that the contract should be governed by the laws of Missouri. The derrick company was seeking to obtain possession of its property by invoking the aid of the courts of this state, and in such a proceeding as must be governed by the laws of this state with respect to the recovery of possession of property sold under conditional sales contracts. * * *"

■ Since the property involved here was, by agreement of the parties, removed from Iowa to the state of Missouri, where it was to be kept and used for purposes for which it was sold, the Missouri conditional sales statute will govern this action.

The judgment is erroneous and must be and is reversed. The cause is remanded with directions that evidence be heard on the value of the use of the equipment during the time it was in plaintiff's custody, and that judgment be entered for plaintiff for the amount paid by him, less the value of its use, which value shall not exceed twenty-five percent of $7,471.49.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.