**AMERICAN INSTITUTE OF MARKETING SYSTEMS, INC., a corporation, Plaintiff-Appellant,**

v.

**Eula T. BROOKS, d/b/a Landmark Real Estate, Defendant-Respondent.**

No. 34007.

St. Louis Court of Appeals, Missouri.

July 27, 1971.

Love & Lacks, Thomas K. Edelmann, Clayton, for plaintiff-appellant.

Evans & Dixon, Henry Menghini, Jerry D. Perryman, St. Louis, for defendant-respondent.

WEIER, Commissioner.

Suit upon a written contract. Plaintiff has appealed from a judgment of the circuit court dismissing its petition. The court gave as its reason the contract was void under the laws of the State of Alabama. We reverse and remand.

This is one of a series of cases appealed to this court by plaintiff as a result of the action of the circuit court in dismissing petitions filed by the same plaintiff, American Institute of Marketing Systems, Inc., (hereinafter referred to as AIMS), on similar written contracts against non-resident defendants. The other cases decided contemporaneously with this one involved,

as the significant issue in each, the validity of service of process upon an agent residing in Missouri appointed in a clause of the contract by a non-resident party for that purpose. Notice had been given by the non-resident party to terminate the contract in each of those cases, but not the agency, prior to the filing of suit. We are not confronted with that issue in this case.

AIMS here filed suit against defendant Eula T. Brooks, seeking damages for breach of contract, in the sum of $3,129.00 with attorney's fees. Defendant, a resident of Alabama, filed a motion to quash the writ of summons with the return of service and to dismiss plaintiff's petition, but this was denied. Defendant's answer admitted entering into the contract, but set up affirmative defenses, none of which is pertinent. Along with the last amended answer, defendant filed a motion to dismiss plaintiff's petition, in which she contended that the written contract on which the petition was based was consummated in the State of Alabama; that plaintiff was not a corporation licensed to do business in that state; that under the laws of the State of Alabama (Title 10, Section 21(89) of the Code of Alabama, 1940, as amended, and Title 51, Section 342, Alabama Code, recompiled, 1958) defendant had the right to declare and did so elect to declare the contract void. Supporting documents were filed with the motion.

The circuit court thereupon determined that a construction of the contract upon which suit was brought required a final act of receipt of notice in the State of Alabama by defendant, and hence the laws of Alabama applied as to the contract's validity. And since defendant had elected to declare the contract void under Section 342, supra, there was no valid contract. Therefore, defendant's motion to dismiss, in the opinion of the court, was well taken and plaintiff's petition was dismissed.

This is not a case that involves the capacity of one of the parties to contract with the other. AIMS, at the time of the con-

tracting, was a Missouri corporation, with full power and authority to contract under the laws of its domicile, Missouri. The statutes of Alabama, supra, did not deny it the right to contract with a resident of Alabama in Alabama. They merely provided that if the Alabama party so desired he could declare the contract void because of the failure of the Missouri corporation to register under its laws. The issue before us, therefore, goes to the validity of the contract rather than the capacity of one of its parties.

■ Appellant AIMS, relying on Missouri cases which hold that matters of validity and construction are governed by the law of the state where the contract is completed, first contends that the last act necessary for the formation of the contract was acceptance by AIMS in Missouri. Defendant Brooks, on the other hand, contends that the last act to be performed was notification and acceptance of the contract by defendant in Alabama.

We turn to the contract. Paragraph 21 reads:

"Each undersigned party warrants that he has full authority to sign and execute this Agreement and does further agree that this Agreement becomes valid on the date it is accepted by Aims. Aims will notify Broker of the acceptance of this agreement by sending Broker notice, and an executed copy of this Agreement signed by a corporate officer. If this Agreement is not accepted within thirty (30) days of receipt hereof then all monies paid hereunder shall be returned to Broker."

The court below, considering paragraph 21, concluded that the first sentence, which fixed the date of acceptance by AIMS as the time when it became a valid contract, established the last act of contract completion in Missouri. And thus its validity would be determined under Missouri law. On the other hand, the court, in reading the third sentence of paragraph 21, determined that Brooks must be notified of the ac-

ceptance by AIMS within 30 days of receipt of the contract or no contract exists and therefore the final act of receipt must be made in Alabama. This would, according to the court's reasoning, require that the contract be completed in Alabama and so subject to Alabama law. Since the court determined the contract was ambiguous as to where it was to be completed, it construed the paragraph against the drafter, AIMS, and held the contract invalid under the laws of Alabama as an Alabama contract.

We cannot find this meaning in the third sentence as found by the circuit court. Reading the entire paragraph, we believe its plain meaning, as indicated by its words and composition, is that the contract became valid when it was accepted by AIMS; that a notice of acceptance would be sent Brooks, along with an executed copy of the agreement; and that the monies received by AIMS would be returned to Brooks if the contract was not accepted by AIMS within thirty days of receipt of the contract. We cannot read into this clause a requirement that the notice of acceptance must be received by Brooks in Alabama before the agreement becomes a valid contract. The words used are not ambiguous but have a clear meaning. And, if clear and unambiguous, the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine intent of the parties. Insurance, Inc. v. Sanders, Mo.App., 378 S.W.2d 249, 252 [6].

It has been frequently held that the place where the last act is done is the place of the contract. Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623, 630 [13]; Deister v. Thompson, 352 Mo. 871, 180 S.W.2d 15, 17 [2]; Toon v. David G. Evans Coffee Co., Mo.App., 103 S.W.2d 533, 537 [1]. And the law of the place where the contract is made will usually be applied by the state where the action is brought to determine its validity. Schoene v. Hickam, Mo., 397 S.W.2d 596, 601 [5];

Grider v. Twin City Fire Insurance Company, Mo.App., 426 S.W.2d 698, 700 [1]. Furthermore, receipt of notice of acceptance is not required. Where the offer is accepted by letter, although the letter never reaches the person making the offer, the contract is completed when the letter of acceptance is mailed. Egger v. Nesbit, 122 Mo. 667, 27 S.W. 385, 386; Price v. Atkinson, 117 Mo.App. 52, 94 S.W. 816, 818; 17 Am.Jur.2d, Contracts, § 48, p. 388. Certainly, by applying these general principles to the facts in the instant case under paragraph 21 of the contract, we have no difficulty in deciding that the contract was completed in Missouri, and, being a Missouri contract, the laws of Missouri apply in determining its validity.

■ Plaintiff is not content with relying on the law that the law of the place of making governs the validity of the contract, but goes on to bolster its position by asserting that the intention of the parties, as expressed by paragraph 18 of the contract, indicates that the laws of Missouri should also govern the validity of the contract. Defendant agrees that the intent of the parties should govern, but contends that, if all of paragraph 18 is read, the conclusion will be reached, where Missouri law is in conflict with Alabama law, then Alabama law applies, and in this case the latter must govern validity.

We first read the applicable portions of paragraph 18:

> "18. This Agreement shall be construed according to the laws of the State of Missouri. If any provision of this Agreement, which on its effective date, is in conflict with the statutes of the State named in this Agreement as the address of the Broker, it is hereby amended to conform to the minimum requirements of such statutes, * * *."

Even though the principle that the law of the place of making the contract

governs its validity is usually accepted as the general rule, it is recognized in the authorities that much confusion exists whether the law of 1) the place of making the contract, or 2) the place of its performance, or 3) the place intended by the parties, governs with respect to its execution, validity and interpretation. See In Re De-Gheest's Estate, 362 Mo. 634, 243 S.W.2d 83, 87–90; 16 Am.Jur.2d, Conflict of Laws, §§ 38–42, pp. 55–68. Actually, different factual situations call for different results. Campbell v. Sheraton Corp. of America, 363 Mo. 688, 253 S.W.2d 106, 108. Many decisions in Missouri sustain the rule that the laws of the state chosen by the parties should be applied to determine the validity of the contract. Under this concept, the place where the contract is made and the place where the contract is performed are important factors which may be used to determine the intent of the parties, but the most persuasive is intent. Hansen v. Duvall, 333 Mo. 59, 62 S.W.2d 732, 739 [19]; Yeats v. Dodson, 345 Mo. 196, 127 S.W.2d 652, 656 [3], modified as to another matter, 345 Mo. 196, 138 S.W.2d 1020; Phillips v. Englehart, Mo.App., 437 S.W.2d 158, 160 [1, 2]; Auffenberg Lincoln-Mercury, Inc. v. Wallace, Mo. App., 318 S.W.2d 528, 532 [6]. "Generally speaking, the place of making a contract is determined according to the parties' intention; as a rule, it is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed." Thus, quoting 17 C.J.S., Contracts, § 356, (now 17A C.J.S. § 356, p. 352), the court in Overcash v. Yellow Transit Co., 352 Mo. 993, 180 S.W.2d 678, 681 [1] accepts and adopts the principle that intent governs. Completion in a particular place infers that the parties intend that the law of that place governs the validity. This is a reconciliation of the two theories which seems to meet judicial approval. For a discussion of the authorities in this connection, see In Re DeGheest's Estate, supra, 243 S.W.2d., l.c. 87–90; Phillips v. Englehart,

supra, 437 S.W.2d., l.c. 160–162; 16 Am. Jur.2d, Conflict of Laws, § 41, p. 64. "Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be obtained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured." Restatement, Conflict of Laws, § 187, Comment on Subsection (2)e, p. 565.

Returning to paragraph 18 of the contract between AIMS and Brooks, there can be no doubt that the law of Missouri is expressed in the first sentence to be the choice of the parties. It is obvious that this is the body of law which was intended to govern the validity of the contract. Defendant asserts that the second sentence, which conforms provisions of the contract to the minimum requirements of statutes of the state given as defendant's address, requires the application of Alabama law when in conflict with Missouri law. We do not so interpret this portion of the contract. This part of the second sentence above quoted applies to the internal construction of contractual provisions, especially those to be performed in Alabama, where minimum requirements of Alabama law by its terms are to be met by the parties. We cannot accept the construction advocated that this sentence refers to execution and validity of the entire instrument, when it seems obvious that the parties intended that the contract be governed by Missouri law, both by reason of their expression in the first sentence of paragraph 18 and their completion of the contract in Missouri as required by paragraph 21. In addition, the parties, by agreeing in the contract to the appointment of a Missouri agent for receipt of process directed to defendant, provided a Missouri forum convenient for trial of disputes

arising out of their contractual relationship.

Lastly, defendant, in support of the lower court's judgment, advances the theory that the laws of Alabama should be applied to hold the contract invalid since that state has the most "significant contacts" with the contracting parties. In support of this contention, defendant cites Kennedy v. Dixon, Mo., 439 S.W.2d 173, where a decision by a divided court held that Missouri law would be applied regarding the host-guest relationship between an injured passenger and a deceased driver of a motor vehicle in a claim for personal injuries where both the parties resided in Missouri, the trip was to originate and terminate in Missouri, and the automobile was licensed and garaged in Missouri. Except for the host-guest relationship, the court determined that the issues of negligence should be decided by the laws of Indiana where the collision occurred. The opinion of the court refers to the contemporary development in the law to leave the harsh and inflexible provisions of the lex loci delicti rule and instead adopt the more liberal "principal contacts" rule expressed in Restatement, Conflict of Laws, 2d ed., § 145, (Kennedy v. Dixon, supra, Mo., 439 S.W.2d, 1. c. 180–181). Defendant further views the reference in that opinion to an Indiana case, holding that the validity of a note was governed by the law of Illinois, as strengthening defendants' contention that the Supreme Court of Missouri would apply the most "significant contacts" doctrine to determine conflict-of-laws issues in cases ex contractu. In referring to this case of W. H. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417, the opinion in *Kennedy* does not attempt to adopt its statement as the law of Missouri or predict that it will be the law. It merely points out this contract case as being an Indiana case compatible with the "principal contacts" theory advanced, having found no reference to such a theory in Indiana foreign tort cases.

The "principal contacts" doctrine is adopted in Restatement, Conflict of Laws, 2d ed., § 188, p. 575, as a test to determine the law to be applied in a contract case. But we need not indulge in a discourse on the nebulous nexus, the "grouping of contacts", or "finding the center of gravity" called for by the authorities in this area. Rather, we refer to § 186 (Id., 1. c. 558): "Issues in contract are to be determined by the law chosen by the parties in accordance with the rule of § 187 and otherwise by the law selected in accordance with the rule of § 188." Since the parties have chosen the law of Missouri by their expression of intent in the contract and by their completion of the contract in Missouri, there is no need to consider following § 188 to determine by secondary rule that which has already been decided by a first principle.

The judgment is reversed and the case remanded, with instructions to re-instate plaintiff's petition and proceed with the case in accordance with this opinion.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the case remanded, with instructions to re-instate plaintiff's petition and proceed with the case in accordance with this opinion.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not participating.