**William S. NAKAO, Petitioner-Appellant,**

v.

**Helena M. (Mary R.) NAKAO, Respondent.**

**No. 11511.**

Missouri Court of Appeals,
Southern District,
Division One.

July 2, 1980.

Gary T. Nelms, Jones, Keeter, Karchmer, Nelms & Sullivan, Springfield, for petitioner-appellant.

Dale L. Davis, Bussell, Hough, Bernhardt, Leighton & O'Neal, Springfield, for respondent.

GREENE, Judge.

On November 8, 1972, petitioner William S. Nakao and respondent Helena M. Nakao, husband and wife, while residing in the state of New York, entered into a separation agreement. Relevant provisions of the agreement are as follows:

"WHEREAS, the parties are desirous of entering into an agreement, under which they may continue to live separate and apart, and of settling (1) their property rights; and (2) agreeing on the terms of the support and maintenance for the wife,

NOW, THEREFORE, in consideration of the premises and the mutual promises and undertaking herein contained, and other good and valuable considerations, the parties agree:

.    .    .    .    .

6. The Husband agrees to pay or cause to be paid to the Wife in semi-monthly installments in advance commencing on the 1st day of January, 1973, and on the 15th day and 1st day of every month thereafter the sum of Three Hundred ($300.00) Dollars for the support and maintenance of wife. The total semi-monthly payments will equal Six Hundred ($600.00) Dollars per month.

In addition to the foregoing, the Husband further agrees to maintain present hospital coverage or the equivalent thereof, for the benefit of the wife.

The only obligation of the Wife until the beginning of the semi-monthly payments as aforesaid will be to pay current fuel, electricity and telephone bills, which bills might be now considered the joint obligation of the Husband and Wife.

7. The provisions of this agreement shall not be construed to prevent either party from suing for an absolute or limited divorce, in this or any other competent jurisdiction, upon such grounds as he or she shall elect, or as he or she may be advised; but no decree of divorce or separation so obtained by either party, shall in any way affect this agreement or any of the terms, covenants, or conditions thereof, this agreement being absolute, unconditional and irrevocable, and both parties intending to be legally bound thereby. In the event that either party brings suit against the other for an absolute or limited divorce, the existence of this agreement shall be specifically called to the attention of the Court in which the action is pending, and shall be incorporated in the decree rendered, so as to be merged therein.

8. Each of the parties hereto shall, upon the request of the other party hereto, or the legal representatives of said other party, from time to time, execute, acknowledge and deliver all such instruments and do all such other acts as may be necessary to carry out further and

more fully the terms of this agreement and the purposes and intent thereof.

9. The parties hereto declare that each has read this agrement (sic) carefully, that they have had the benefit of advice from their attorney, and that each considers this agreement to be fair, just and reasonable, and each signs this agreement freely and voluntarily.

10. No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

11. This agreement shall be binding upon and enure to the benefit of the parties hereto, their respective heirs, executors, administrators, and assigns."

The agreement was signed and sworn to by both parties.

Thereafter, petitioner moved to Springfield, Missouri, and respondent remained in Jeffersonville, New York. On October 22, 1976, after petitioner had filed a dissolution of marriage action in the Circuit Court of Greene County, the parties entered into an amendment to the separation agreement. The relevant portions of the amendment read as follows:

" . . .

2. The provisions of Paragraph 6 of the agreement of November 8, 1972, will contain the following additional provision to be added to the first paragraph therein:

Payment of the said semi-monthly payments will be made by authorization to the First National Bank of Jeffersonville, Jeffersonville, New York 12748, to transfer on the 1st and 15th day of each and every month the sum of Three Hundred ($300.00) Dollars from the account of the husband bearing number 02–1035–8 for deposit to the account of Mary Nakao bearing account number 05–14683.

3. The parties further mutually agree that in all other respects except those set out in Paragraph 1 hereof, the agreement of November 8, 1972, between the parties respecting their rights in and to marital property shall be in full force and effect and that said agreement of November 8, 1972, and this amendment thereto constitutes the complete agreement between the parties and that said complete agreement shall be presented to the court for incorporation in any decree of dissolution of marriage or divorce while may ultimately be entered by the court.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

/s/ William S. Nakao
/s/ Mary R. Nakao"

On November 4, 1976, the trial court entered a Decree of Dissolution of the marriage. In regard to maintenance, the decree recited,

"Petitioner to pay Respondent the sum of $300 on the 1st and 15th day of each month hereafter during their joint lives or until Respondent's remarriage, as provided in Paragraph 6 of Agreement dated November 8, 1972, and as amended October 22, 1976. . . . Separation agreement filed marked Exhibit A and B (the November 8, 1972 separation agreement, and the October 22, 1976 amendment) and found to be conscionable. . . . Separation Agreement to be incorporated in and made part of decree."

On January 12, 1979, petitioner filed a motion to modify the decree relative to his obligation to pay the $600 a month maintenance. He alleged that he had been laid off from his employment as a chicken sexor, and that there was no reasonable likelihood that he could secure employment with compensation substantially equivalent to his previous work. He requested that his obligation to pay maintenance be substantially reduced or terminated. On June 14, 1979, respondent filed a motion to dismiss the motion to modify, claiming that petitioner's motion failed to state a claim upon which relief could be granted and that "the judgment sought to be modified by Petitioner is one based on a contract of support which is

not subject to modification by the Court without the consent of both parties . . ." The trial court then entered its order sustaining the motion to dismiss, and dismissing petitioner's motion to modify, on the grounds that such motion failed to state a claim for relief as "the maintenance referred to in the Decree of Dissolution is contractual and not decretal, and therefore, is not subject to modification." This appeal followed. We affirm.

■ In his first point of error, petitioner alleges that neither the separation agreement nor the decree of dissolution expressly excluded modification of maintenance and, therefore, the maintenance awarded in the decree is modifiable under the Dissolution of Marriage Act. We do not agree. Paragraph 7 of the separation agreement stated that it was absolute, unconditional, and irrevocable, and that both parties intended to be legally bound by its terms. Paragraph 10 of the agreement provided that no modification of the agreement would be valid, unless the modification was in writing, and formally executed by the parties. These provisions of the agreement remained intact after the amendment, and evidenced a firm intention on the part of petitioner and respondent that the $600 a month maintenance provision in the separation agreement be final, binding, and not subject to modification except by mutual consent, absent fraud, duress, or illegality. *LaFountain v. LaFountain*, 523 S.W.2d 847, 848 (Mo.App.1975). Section 452.325.2 [1] provides that written separation agreement provisions as to maintenance are binding on the trial court, if it finds such provisions are conscionable, which it did here. See *In re Marriage of Haggard*, 585 S.W.2d 480, 482 (Mo. banc 1979).

The trial court, by finding that the separation agreement and its amendment were conscionable, gave its judicial approval to the plain language of the agreement and, by incorporation of the agreement and the amendment into the decree, reduced to judgment the fact that the maintenance of $600 per month due respondent could not be modified except by mutual consent of the parties. The point is denied.

■ Petitioner next contends that since the separation agreement provided that its provisions would be "merged" in any subsequent divorce action, the parties intended that the trial court would, in the event a dissolution was granted, retain full power to modify the maintenance provisions of the contract. Petitioner evidently believes that New York law, where such a construction of a "merger" type clause has been made, *McMains v. McMains*, 15 N.Y.2d 283, 258 N.Y.S.2d 93, 206 N.E.2d 185 (Ct. App.1965), is controlling here since the separation agreement was made in the state of New York. It is not. The place where the contract was made, the place where it was amended, and the place where it is to be performed are all important factors to consider in determining what law governs the interpretation of the contract, but such factors are not necessarily conclusive. *Phillips v. Englehart*, 437 S.W.2d 158, 160–161 (Mo. App.1968). The parties to a contract may make a choice as to the state whose law shall govern an interpretation of their contract rights and duties. *American Institute of Marketing Sys., Inc. v. Brooks*, 469 S.W.2d 932, 936 (Mo.App.1971). They did not do so in this case, either directly or by any reasonable implication. In cases such as this, where there is an absence of an effective choice of law by the partners, Missouri uses the criteria found in § 188, *The Restatement (Second) of Conflicts of Law* (1971), in determining whether Missouri law, or that of a sister state should apply. The contractual contacts to be taken into account in making this determination are: a) the place of contracting; b) the place of negotiation of the contract; c) the place of performance; d) the location of the subject matter of the contract, and e) the domicile, residence, nationality, place of incorporation and place of business of the parties. All of these factors are to be evaluated according to their relative importance with respect to

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

the particular issue. *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo.App.1978). Using this test, we are of the opinion that Missouri law should control.

While it is true that the original separation agreement was executed in the state of New York, there is no evidence that the parties contemplated a divorce action in that state into which the agreement would be "merged". To the contrary, when the amendment to the agreement was executed on October 22, 1976, an action for dissolution of the parties' marriage was pending in the Circuit Court of Greene County, Missouri. The amendment noted such fact, and said, "Whereas, prior to the trial of the issues in the pending action for dissolution of marriage, the parties desire to amend and modify the said agreement of November 8, 1976 . . . .." There was no claim made to the trial court that the agreement was modifiable, other than by mutual consent, or that it, or the decree incorporating the agreement, was governed by the state of New York. The maintenance agreement and the decree were enforceable in Missouri, and petitioner was a resident of Missouri. The issue here is governed by the law of the state of Missouri.

While courts in most states agree that spouses in contemplation of dissolution of marriage may validly contract to settle all of their property rights including maintenance, there is some disagreement over the effect to be given those contracts when they are incorporated into the dissolution decree. Some jurisdictions give the property settlement agreements independent significance as contracts, regardless of incorporation. Other jurisdictions view the agreements as merged with the decree, subject to modification as a judgment of the court. Missouri courts take the first approach and hold that where spouses execute an agreement to settle all marital property rights, including maintenance, the agreement is a contract, to be interpreted and enforced as such, regardless of whether it is incorporated into the decree. See *Nelson v. Nelson*, 516 S.W.2d 574, 578–579 (Mo.App.

1974), and cases cited there. Using the Missouri test, it is evident that the maintenance agreement is not subject to modification, except by mutual consent of the parties. The point is denied.

Petitioner's final contention is that since the motion to modify was based on a change of circumstances of petitioner, the motion stated a cause of action, and should not be subject to a motion to dismiss. Since this point is based on the premise that the maintenance award was modifiable, without mutual consent, which premise we have already said is faulty, the point is moot. The point is denied.

Although the trial court probably should have recited in the decree that the separation agreement and its amendment were nonmodifiable, as suggested by § 452.325.6, the order of the trial court, in dismissing petitioner's motion to modify, was correct under the facts and the law and, therefore, should not be disturbed. *Campbell 66 Exp. v. Thermo King of Springfield*, 563 S.W.2d 776, 778 (Mo.App.1978).

The order of the trial court dismissing petitioner's motion to modify is affirmed.

All concur except PREWITT, J., recused.