560 F.Supp. 1261 (1983)
FIRST NATIONAL BANK OF LOUISVILLE, Plaintiff,
v.
INSURANCE CENTERS, INC., et al., Defendants.
No. 81-1250C(2).
United States District Court, E.D. Missouri, E.D.
March 31, 1983.
William R. Bay, St. Louis, Mo., for plaintiff.
P. Terence Crebs, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This case is now before this court on the cross motions of the parties for summary judgment. Each party contends that there are no issues of material fact remaining and *1262 therefore, they are entitled to a judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In addition to submitting legal memoranda, affidavits, depositions, and exhibits in support of their respective motions, the parties have submitted a joint stipulation of facts. Plaintiff First National Bank of Louisville [hereinafter "FNBL"], defendant Insurance Centers, Inc. [hereinafter "ICI"] and defendants Pat Mariam, Martha Mariam, Robert S. Mariam, and Ruth Mariam have agreed to stipulate to the following facts:
1. Plaintiff is a national banking association duly organized and existing under and by virtue of the law of the United States of America and is authorized to transact business at the First National Tower, Louisville, Kentucky 04232.
2. Defendant Insurance Centers, Inc. is a corporation in good standing, duly organized and existing under the laws of the State of Missouri, with its principal place of business in Missouri. Its registered agent is Robert S. Mariam. Defendant Insurance Centers, Inc. is a citizen of the State of Missouri. Defendants Pat Mariam, Martha Mariam, Robert S. Mariam and Ruth Mariam are citizens of and reside in the State of Missouri.
3. Jurisdiction of this cause of action is proper in this Court by virtue of 28 U.S.C. S 1332, in that the amount in controversy, exclusive of interest and costs, exceeds $10,000.00 and is between citizens of different states. This court has venue over this action pursuant to 28 U.S.C. S 1391.
4. On or about August 18, 1979, Insurance Centers, Inc. duly and properly executed an "Equipment Lease" which was accepted by Tri-Continental Leasing Corporation (hereinafter "Tri-Continental") on or about September 18, 1979. By its terms, ICI leased equipment from Tri-Continental at an agreed upon rental of $1,457.42 per month for a period of 60 months.
5. On or about August 20, 1979, defendant Pat Mariam as well as his spouse Martha Mariam executed and delivered to Tri-Continental an Individual Guaranty (hereinafter "Guaranty").
6. On or about August 20, 1979, defendant Robert S. Mariam as well as his spouse Ruth Mariam executed and delivered to Tri-Continental an Individual Guaranty (hereinafter "Guaranty").
7. In late 1979, Tri-Continental assigned its entire interest, including its right to receive 54 monthly payments of $1,457.42 each from ICI, to plaintiff.
8. ICI executed an Acknowledgment of Assignment.
9. From time to time, defendant ICI made payments totalling $24,776.25.
10. Due to ICI's failure to make Lease payments as and when due, plaintiff declared a default in this loan account on February 19, 1981. The gross remaining balance is $53,924.43 and the buy-out figure based on plaintiff's regular and customary method of calculation equaled $44,618.79.
11. Plaintiff has made demand upon each of the defendants for payment.
12. After February 19, 1981, plaintiff proceeded to retake and dispose of some of the equipment which was the subject of the Equipment Lease. The retaking, advertisement of the equipment and its sale were done in accordance with plaintiff's regular and customary business practices.
In support of its motion for summary judgment, the plaintiff contends that it has proved the essential elements of its case and there are no issues of material fact with respect to the elements of proof or the affirmative defenses raised by the defendants. In its motion the plaintiff then speaks to each affirmative defense raised by the defendants in their answers: the defendants first contend that the guaranties in question were nonassignable guaranties because they were "special"; second, the defendants assert that the plaintiff failed to mitigate its damages by reasonably disposing of the collateral that was retaken by agreement of FNBL and defendants. The defendants' last affirmative defense consists of the allegations that the lease agreement was in fact a financing device; the lease is unconscionable; and finally, the provision in the lease for the *1263 acceleration of future payments is invalid and unenforceable.
In response to the plaintiff's motion for summary judgment and in support of its own motion for summary judgment, the defendants contend that Missouri law, rather than New Jersey law applies to this cause of action, despite the fact the lease and guaranties contain provisions requiring the application of New Jersey law. Furthermore, the defendants assert that the plaintiff is precluded from recovering a deficiency judgment from the defendants for sums due under the equipment lease, because the plaintiff failed to notify the defendant of the sale of the collateral, as required by Missouri law. In addition, the defendants reassert their argument that the guaranties in question are "special" and therefore nonassignable. With respect to the latter argument, the defendants also contend that Missouri law, rather than New Jersey law applies. The latter two defenses are the only issues raised by the defendants in their respective motions. The defendants failed to speak to the additional affirmative defenses raised in their answers in their motion for summary judgment, or in response to the plaintiff's motion. In light of the requirement embodied in Rule 56, that "an adverse party may not rest upon the mere allegations or denials in his pleading", it must be concluded that defendants have failed to preserve those affirmative defenses that they have not supported by affidavit or exhibit in their motion or response. Therefore, the sole issues presently before this court are as follows: one, the appropriate choice of law; two, whether the plaintiff is precluded from recovering the deficiency judgment because of its failure to notify the defendants of the sale of the equipment; and finally, whether the guaranties in question are "special" and therefore, nonassignable.
In diversity actions, a district court is required to follow the law of a forum state. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, in order to determine what is the applicable law in this action, this court must look to the Missouri choice of law rules. Missouri courts recognize that the parties to a contract have a right to agree that a contract can be governed by the law of a state "where some element of the contract is properly referrable." Phillips v. Englehart, 437 S.W.2d 158 (Mo.App. 1968). The rationale behind this rule of law is that one of the basic objectives of contract law is to protect the expectations of the parties and make it possible for them to foresee their rights and liabilities under contracts. American Institute of Marketing System v. Brooks, 469 S.W.2d 932, 935 (Mo.App.1971). By allowing the parties to choose the law to govern the validity of a contract and any resulting rights created thereunder, certainty and predictability can be assured. Id. This policy is expressly recognized under Missouri law; Mo.Rev. Stat. S 400.1-105(1) explicitly provides:
Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties...
Therefore, unless a statutory provision provides otherwise, parties may agree to the governing law as long as the "transaction bears a reasonable relation" to the state in question. Comment number 1, following this section of the code further explains that the test of "reasonable relation" is similar to the test enunciated by the Supreme Court in Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927). This test has been read as limiting a party's choice of law only to the extent that it precludes them from selecting a jurisdiction which has `no normal relation to the transaction'. Wood-Tucker Leasing Corp., Etc. v. Hutcheson-Ingram, 642 F.2d 744, 751 (5th Cir.1981). Citing. Seeman v. Philadelphia Warehouse Co., supra. Therefore, under this standard the parties' choice of law should be upheld, unless it can be shown that the connection with the state whose law is selected was contrived solely for the purpose of validating the parties' choice of law. Id.
Applying the above principles to the facts of this case, it must be concluded that *1264 the equipment lease bears a reasonable relation to New Jersey as required by Mo. Rev.Stat. S 400.1-105(1). The plaintiff has presented affidavits which demonstrate that the original lessor Tri-Continental is a New Jersey Corporation. The equipment lease was reviewed and approved by Tri-Continental in its New Jersey office and was signed in New Jersey by the President of Tri-Continental. Therefore, it can be concluded that the contracts with New Jersey were normal and not contrived solely for the purpose of validating the choice of law found in the lease and guaranties. Therefore, the transaction satisfies the "reasonable relation" test embodied in the Missouri statute.
In addition to requiring that a "transaction bears a reasonable relation" to the state whose law is to govern the contract, the Missouri statute further limits the situations in which parties may choose their own law by providing that "[w]here one of the following provisions of this chapter specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of law rules) so specified:" Mo.Rev.Stat. S 400.1-105(2). One of the chapters specified is Section 400.9-102, which concerns the creation of security interests. This section provides: "this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state ... to any transaction (regardless of its form) which is intended to create a security interest...." It is the contention of the defendants that the above sections require the application of Missouri law to the present suit because under the terms of the equipment lease, Tri-Continental was given a security interest in the equipment, which remained in Missouri.
There is no question that pursuant to Mo.Rev.Stat. SS 400.1-105(2) and 400.9-102, Missouri law governs issues relating to the creation and perfection of the security interest. However, the plaintiff instituted this suit for the purpose of obtaining a deficiency judgment after repossessing and selling the equipment. Therefore, the issue presented by the plaintiff's cause of action concerns the propriety of the plaintiff's sale of the secured equipment. It is clear that when the choice of law is specified by a section of the Uniform Commercial Code, as adopted by the Missouri legislature, to the extent that that section governs, a contrary agreement of the parties is ineffectual. However, since Article 9 of the Code concerns itself only with security interests, the parties' choice of law will govern other aspects of the parties' agreement. In re Boling, 13 B.R. 39, 41 (Bkrtcy.D.Tenn.1981) citing Doyle v. Nothrop Corp., 25 U.C.C.Rep. 932, 942 (D.C.D.N.J.1979). It is the opinion of this court that issues relating to the repossession and sale of the equipment should be governed by the parties' choice of law in this instance because the sale and repossession of the equipment constitutes a distinct and separate transaction from the creation of the security interest through the execution of the lease. In fact the repossession of the equipment was effectuated through a forbearance agreement executed by the plaintiff and defendants. Therefore, it must be concluded that New Jersey law governs the issues presented by this case.
Under New Jersey law, a party is not automatically deprived of recovering a deficiency resulting from the repossession and sale of collateral, even if the secured party has not received reasonable notice of the sale. However, the burden rests upon the secured party to demonstrate that "the sale resulted in the fair and reasonable value of the security being credited to the debtor's account." Conti Causeway Ford v. Jarossy, 114 N.J.Super 382, 276 A.2d 402 (D.N.J.1971). The parties in this action have stipulated that "[t]he retaking, advertisement of the equipment and its sale were done in accordance with plaintiff's regular and customary business practices." The equipment was sold for a total of $15,241.38. The plaintiff has presented sufficient evidence to satisfy its burden of demonstrating that this amount represents "the fair and reasonable value of the security." In fact, in a letter dated July 1, 1981 written by defendant Robert S. Mariam to Mr. George M. Spanish, Mr. Mariam acknowledged that he did think he should be held responsible for a deficiency if at least $13,000.00 *1265 was not received for the equipment. In light of this evidence, it is the opinion of this court that the plaintiff is entitled to the deficiency resulting from the repossession and sale of the equipment.
The defendants' final contention is that the plaintiff is precluded from recovering a deficiency judgment because the guaranties in question are special guaranties and therefore nonassignable. For reasons previously stated, this court believes that New Jersey law should govern this issue. Furthermore, a guaranty is not a transaction intended to create a security interest and therefore is not governed by Article 9 of the U.C.C. EAC Credit Corp. v. King, 507 F.2d 1232 (5th Cir.1975). Therefore, there is no question that the choice of law provision in the guaranties is valid and applies to this transaction. The question of whether the guaranties executed by the defendants were special guaranties under New Jersey law was resolved by this court in its memorandum of February 9, 1982. There is no reason to reevaluate that issue at this time. Therefore, the holding of this court will stand and will be that "the defendants' personal guaranties were transferred to the plaintiff through the assignment of the lease and the guaranties are general and valid." Slip Op. at P. 5.
Accordingly, the motion of the plaintiff for summary judgment will be granted and the motion of the defendants for summary judgment will be denied. Plaintiff's counsel shall submit an itemization of the numbers of hours expended on this case and the hourly rate charged.